AUGUST DOBBERSTEIN, Appellee, v. EMMET COUNTY, BELLA NASBY et al., Appellants.

**NEW TRIAL:** Newly Discovered Evidence—Mistake of Witness.
1 Newly discovered and uncontradicted evidence fairly demonstrating that, on a former trial of a cause (in which the evidence was at least quite evenly balanced), a material witness was *mistaken* in his testimony, demands the reopening of the cause for a new trial, the petitioner for new trial having been diligent in discovering such new evidence. (Sec. 4091, Code, 1897.)

**NEW TRIAL:** Newly Discovered Evidence—Impeachment of Witness—Demonstrating Mistake. In an application for a new trial,
2 there is a marked distinction between newly discovered evidence which could only work the impeachment of the character or credibility of a witness, and evidence which demonstrates that such witness was *mistaken* in his former testimony. The latter is none the less grounds for new trial because it may, in a sense, impeach the witness.

**NEW TRIAL:** Newly Discovered Evidence—Conclusiveness of Former Findings—Non-Applicability of Principle. The principle that
3

the findings of a court or jury in the trial of a cause are conclusive, until set aside, cannot possibly have any application or bearing on a petition for new trial, under Sec. 4091, Code, 1897.

**APPEAL AND ERROR:** Review—Scope and Extent—New Trial—
4 Newly Discovered Evidence—Findings of Trial Court—Law and Fact Distinguished. If, in the trial of an application for a new trial under Sec. 4091, Code, 1897, there be *conflict* in the evidence with reference to the grounds upon which a new trial is asked, the findings of the trial court will be treated as a jury verdict—that is, conclusive on appeal. But, if there be *no conflict* in such evidence, then the sufficiency thereof as a basis for new trial becomes a *question of law*, and reviewable on appeal as any other question of law.

**NEW TRIAL:** Newly Discovered Evidence—Discretion of Court—
5 Granting and Refusing New Trial Distinguished. The ruling of the court upon an application for new trial is largely a matter of discretion, but this is more broadly true where a new trial has been *granted* than where it has been *refused*.

**NEW TRIAL:** Newly Discovered Evidence—When New Trial
6 Granted. A new trial (due diligence being shown) should be granted under Sec. 4091, Code, 1897, if the newly discovered evidence is material and presents a controversy or issue of fact upon which the jury might reasonably adopt either view.

*Appeal from Emmet District Court.*—D. F. COYLE, Judge.

TUESDAY, JANUARY 11, 1916.

REHEARING DENIED THURSDAY, MAY 4, 1916.

ACTION to establish disputed corners and boundary lines. There was a judgment for plaintiff, and within a year thereafter, the defendants filed a petition for new trial, which was denied, and defendants appeal. The facts, so far as they are material upon this appeal, are stated in the opinion.—*Reversed and Remanded.*

*Francis & Owen, Byron M. Coon,* and *Morse & Kennedy,* for appellants.

*C. W. Crim* and *Morling & Morling,* for appellee.

WEAVER, J.—The principal corner over which this liti-
gation has arisen is the common corner of Sections 7, 8, 17 and
18, Township 100, Range 34, in Emmet County. Plaintiff
owns the north half of Section 18, and the defendants (except
Emmet County) own, respectively, other tracts of land affected
in some degree by the location of that corner. The county is
made a party because of the fact that a public road is laid
east and west along the line between Sections 7 and 18, and
another road is also laid north and south between Sections 18
and 17. On the petition of plaintiff, a commissioner was
appointed to make a survey, locate the corner and report his
findings to the court. The defendants appeared to the pro-
ceeding, denied the plaintiff's claim that the corner was located
elsewhere than at the point indicated by the present occupa-
tion and use of the lands at that point, and alleged that the
corners and lines as claimed by them had been recognized and
acquiesced in by all the adjacent owners for more than 10
years. The commissioner made the survey and heard evi-
dence as to the location of the ancient monuments, as well
as of facts bearing upon the question of acquiescence, and
reported to the court in substance that, while a present survey
retracing the lines according to the government field notes
from other acknowledged corners would indicate the true
original location of the disputed common corner to be north
and east of the spot claimed by the defendants, yet such spot
had been acquiesced in by all the owners of land affected by
such location as the true corner, and that such owners had
adjusted their lines, fences and improvements with reference
thereto for more than 15 years, and such practical location
should be considered established by acquiescence, without
regard to the variations therefrom which might be developed
by a strict technical survey, according to such data of the
original measurements as are now obtainable. Exceptions
being taken to this report, a trial thereon was had to the
court, which disapproved the finding of the commissioner that
the corner and lines had been established by acquiescence,

and ordered that the corner be established at the point men-
tioned by the commissioner, north and east of the present
corner.   This order or decree was entered on February 15,
1913, and, though a notice of appeal seems to have been
served by the defendants, it was withdrawn, pending the
disposition of the petition for new trial which was filed by
defendants in August, 1913.   In support of the demand for
new trial, the petition sets out the substance of the contro-
versy and claims of the respective parties, and a more or less
complete recitation of the testimony produced on the trial.   It
is then alleged that, since said trial, new, material and
important evidence has been discovered, tending to show that
the judgment was rendered upon a mistaken conclusion as
to the facts, and that there is no sufficient support for the
claim asserted by the plaintiff.   The showing so made is to
the effect that, upon said trial, the evidence tended to estab-
lish the fact that the land in and about the neighborhood in
question had been settled for a period of from 40 to 50 years;
that the government mounds and marks of the original sur-
vey had long since disappeared; that fences had been built,
roads laid and improved, trees and hedges planted, buildings
erected and lands occupied with reference to what was
believed to be the true lines and corners, without controversy
and with general acquiescence of all concerned, until some
nine years or more after plaintiff had come into possession of
the north half of Section 18, when he, believing that the true
common corner was north and east of the corner which was
then being recognized by the adjacent owners, began this
proceeding.   Of necessity, living witnesses who could speak
from memory and personal observation of the exact location
of the original monuments were few, and much reliance had
to be placed upon evidence of a merely circumstantial char-
acter.   Plaintiff, however, discovered that one Holm, who was
the first occupant of the southeast quarter of Section 18, a
half mile south of the disputed corner, was still living in the
state of Minnesota, and procured his attendance as a witness.

He testified that he left the neighborhood in 1871, something over 40 years before, and never revisited it until immediately before the trial. He had looked the ground over and said that he found the present grade of the road between Sections 17 and 18 some six rods west of the line upon which it was laid and used during the time that he lived there. According to his recollection, the stake marking the common corner of the four sections was north and east of the corner now used and recognized. The circumstance on which he depended as fixing in his mind the location of the road between Sections 17 and 18 was that, while he was living on Section 18, his child, about 18 months old, died, and the body was buried near his house and inside his road fence, some six rods from the highway. On revisiting the place, just before the trial, he found that the house had been removed and there was no visible sign of his former residence there, but he found what he claimed to recognize as the child's grave, within the bounds of the highway as at present laid out and used. It was not marked by any stone or monument of any kind, but there was a depression in the surface of the ground which convinced him that it was in fact the child's grave; and from that as a starting point, he placed the location of the road and the quarter corner between Sections 17 and 18, as they existed when he lived there, at points corresponding with the present claim of the plaintiff.

It is the theory of appellants that this testimony of the witness Holm was quite influential in determining the result of the trial. They further say that the production of the evidence of this witness was a surprise to them, and that their opportunity to investigate the facts and rebut the testimony was very limited and insufficient to permit the same to be done in time for use in such trial or in time for filing the ordinary motion for new trial; that, immediately after said trial, they did investigate diligently, and thereby discovered with reasonable certainty that Holm was mistaken in suppos-

ing that he found the grave of his child within the limits of the present highway, and also mistaken concerning the location of the house which he occupied on Section 18, and that in fact the real location of the grave and of the place where the house stood is several rods west of the highway, and there has been no change in the location of the section line or highway since the date of which the witness undertook to speak. On the hearing upon the petition for new trial, the attorneys for appellants testified to various facts tending to show diligence in their efforts to discover the desired testimony, and to ascertain all sources of information bearing upon the truth of the evidence so produced by plaintiff, and that they were unable to accomplish that end until after it was too late for use either upon the trial or within the three days' period allowed for filing a motion for new trial. Evidence was also produced to the effect that, at the place which Holm recognized, or thought he recognized, as the grave of his child, excavation had been made covering a considerable area, disclosing no grave or human remains, and no indications that the original strata of soil or subsoil had ever been disturbed, as would be likely to be shown, had a grave ever been made therein. Other excavations made inside of the fence several rods west of the road had brought to view indications of the site of the house where Holm resided, according to the evidence of some of the witnesses, and measuring from this to a point designated by a witness (formerly resident there but now brought from another state) who claimed to remember the burial and the location of the grave, still another excavation was made. The earth at this point showed a mixture of the soil strata, but no human remains. The witness Mrs. Hendrickson, who pointed out the location of the Holm residence and, approximately, as she believed, the child's grave, had lived in those days on the south of these premises and passed them daily in going to and from school, each time very near the grave. There was evidence, also, that, sometime after

the trial, the witness Holm, who has since died, on being interviewed on the subject, said and made affidavit to the effect that his testimony as given on the trial was largely influenced by the belief that the spot found by him within the bounds of the public road was his child's grave, and that, if it should appear that he was mistaken in that respect, he would revise his testimony and would want to look the ground over again. He is further shown to have said that, on revisiting the place, he could not find any of his "old landmarks," and had to rely, in designating the location of the grave, on the appearance of the depression in the ground and on the information which someone gave him that trees had formerly been growing there. The defendants further produced the deposition of one Pingrey, who was one of the early settlers on Section 7, living there and in that vicinity from 1858 to 1885, since which he has resided in Oregon. He places the location of the government stake at the common corner substantially according to the claim of the defendants. The plaintiff offered no testimony in rebuttal, save that of one of his counsel, who visited Holm shortly after the interview to which we have referred, and testifies that he found him in a weakened condition of body and mind, and that Holm said that he had made a statement or affidavit at the request of defendants, but that it was only to the effect that his former testimony was true.

The one question presented by the appeal is whether, upon showing made, the trial court should have granted a new trial. In passing thereon, it is not within the province of this court to retry the merits of the issues decided by the judgment, or to reverse such judgment because of any alleged or apparent error in the proceedings up to and including such entry, but the petition for new trial cannot be intelligently or fairly considered without examining the entire record. Indeed, under the practice prevailing in most states, it is

1. NEW TRIAL: newly discovered evidence: mistake of witness.

required that a petition for new trial shall set out in substantial fullness all the testimony introduced upon the trial in which the judgment was rendered. If, upon such examination, it shall be made to appear that the truth of the essential facts on which the controversy turns is involved in serious doubt, and that the alleged newly discovered evidence is of a character to aid materially in developing the very truth of the matter, the court will grant the rehearing much more readily than where the evidence leaves little room for doubt that the judgment as rendered effectuates substantial justice; and this is done, not because of any reversible error of the trial court in rendering the judgment, but because the court did not have the benefit of material evidence which now seems obtainable and may, on another trial, lead to a different result.

That most of the new evidence proposed by the defendants is of a material character, we cannot doubt, and that they fairly purge themselves of negligence or want of diligence in its discovery, we think clear. While we cannot know for a certainty what effect the evidence of Holm had upon the finding of the court, or whether, without such evidence, the judgment would have been different, it was of a character which may have been decisive of the result. Without his testimony, if we may judge from a reading of the record, the apparent preponderance of the evidence, if not clearly in favor of the defendants, was, to say the least, wavering in an uncertain balance. When, therefore, with something of dramatic effect, the story of this evidently honest and conscientious old man, attested by the grave of his dead child, was thrown into the scale near the close of the trial, it may well have served to tip the beam in plaintiff's favor. It seems very certain, however, that Holm staked the correctness of his identification of the section line wholly upon his discovery of what he supposed to be the grave. The 40 odd years which had intervened had naturally dimmed his memory, and had also destroyed or removed all

the artificial monuments and landmarks with which he had been familiar; but the grave, once found, was a starting point from which he could trace the lines with some degree of certainty. He found what he believed or assumed to be the spot, and, if the court believed him to be correct in this, it could not do otherwise than to accord to his evidence a material degree of weight. If, then, the newly discovered evidence be true (and it is undisputed), it fairly demonstrates the mistake of Holm with reference to the location of the grave, and deprives his evidence, with respect to the section line, of material value. This, we think, was a point of sufficient importance to call for a reopening of the case for another hearing.

It is said by the appellee that the new evidence is at best merely a matter of impeachment of Holm, and that a new trial will not be granted for that purpose. It is probably true that a new trial will ordinarily not be allowed simply to produce evidence impeaching the credibility or character of a witness. On the other hand, it has often been held that newly discovered evidence to successfully contradict a witness upon a material point may be cause for allowing a new trial, and it is no objection to such order that the evidence may incidentally impeach a witness. *Murray v. Weber,* 92 Iowa 757; *Alger v. Merritt,* 16 Iowa 121; *Mally v. Mally,* 114 Iowa 309; 29 Cyc. 920, and cases there cited.

2. NEW TRIAL: newly discovered evidence: impeachment of witness: demonstrating mistake.

Again, it is said by counsel that, the original action being at law, the findings of the trial court are conclusive unless there be an entire absence of evidence in their support. This may be conceded for the purpose of this case, but the right and authority to grant a new trial because of newly discovered evidence are not thereby diminished or excluded.

3. NEW TRIAL: newly discovered evidence: conclusiveness of former findings.

Counsel next argue that the hearing upon the petition for new trial was at law, and not in equity, and the finding of the court thereon is to be treated as a jury

verdict. In support of this proposition, we are cited to *Andres v. Schlueter*, 140 Iowa 389. The opinion thus

**4. APPEAL AND ERROR: review: scope and extent: new trial: newly discovered evidence.** relied on states the rule more correctly to be that, "if there is any conflict in the evidence" with reference to the grounds upon which a new trial is asked, the finding of the trial court will be upheld as a finding at law, and not in equity. In the case before us, the showing made by the defendants for a new trial is in no manner contradicted except in pleading. The disposition to be made of the petition for new trial thus became one of law, and not of fact, and is reviewable in this court.

It is also true, as counsel say, that the ruling of the court upon an application for new trial is largely a matter of discretion, but this is more broadly true where a new trial

**5. NEW TRIAL: newly discovered evidence: discretion of court.** has been granted than where it has been denied. *Shepherd v. Brenton*, 15 Iowa 84, 91; *Tegeler v. Jones*, 33 Iowa 234; *Murray v. Weber*, 92 Iowa 757; *Grotte v. Schmidt*, 80 Iowa 454.

If it be clear that the newly discovered evidence would not affect the result of another trial, then the petition for new trial is, of course, to be denied; but if the evidence be

**6. NEW TRIAL: newly discovered evidence: when new trial granted.** material, and if it presents a controversy or an issue of fact upon which the jury might reasonably adopt either view, then the petition should be sustained. *Wilcox v. Barclay*, 48 Hun (N. Y.) 54; *Holmes v. Roper*, 32 N. Y. St. Rep. 470 (10 N. Y. Supp. 284); *Mackin v. People's St. R. Co.*, 45 Mo. App. 82.

Taking the record as a whole, we are of the opinion that justice will be more nearly obtained by granting the petition, and the ruling appealed from will be reversed and cause remanded, with directions to sustain the petition and set the cause for retrial.—*Reversed* and *Remanded*.

EVANS, C. J., DEEMER and PRESTON, JJ., concur.