FARMERS INSURANCE EXCHANGE, a corporation, appellant, v. BURTON D. MOORES, defendant, and EZRA RAYMOND MOORES, appellee.

FRANCES DEMPSTER, appellant, v. BURTON D. MOORES, defendant, and EZRA RAYMOND MOORES, appellee.

No. 48971.

(Reported in 78 N.W.2d 518)

1182

SEPTEMBER 18, 1956.

Harold E. Hanson, of Logan, and Baird & Baird, of Council Bluffs, for appellants.

Michael Murray, of Logan, for appellee.

PETERSON, J.—On May 9, 1952, at about 1:40 A.M., the defendant Burton D. Moores was driving his 1949 Ford automobile southwesterly on U. S. Highway 30, in Harrison County. About four miles south of Woodbine he drove on the wrong side of the highway with the result that he had a collision with a 1950 Pontiac automobile owned and driven by James S. Dempster. Mr. Dempster and his mother lost their lives. His sister, Frances Dempster, was a passenger in the Dempster car and was seriously injured. Plaintiff Farmers Insurance Exchange carried collision insurance on the Dempster car and under assignment paid his heirs $1575. The case of Farmers Insurance Exchange is for the amount paid out by the company. Frances Dempster sued for damages for personal injuries. In both cases Ezra Raymond Moores, a farmer, the father of Burton D. Moores, was joined as defendant with the allegation that he was the owner of the automobile involved, and Burton was driving it with his knowledge and consent. Early in 1952 Burton was in the Navy and was stationed at San Diego. He was desirous of purchasing a car and he called on Gray Automobile Company. He was only 20 years of age so the company told him they would have to have his father's consent for the purchase. They mailed papers to his father, which he signed and returned. His father never paid anything on the car. Burton made a cash down payment and financed the remainder of the purchase price through a bank at San Diego. In California the certificate is issued by the registrar of vehicles at Sacramento, California. When a car is sold the documents are mailed to the department,

and in due course a new registration certificate is mailed to the new owner. The certificate did not reach Burton before he left California on May 5 to drive home on leave of absence. Burton was injured in the collision, but recovered sufficiently to be present at the coroner's inquest which was held on May 16. At the inquest he testified the car was registered in his father's name. Either the deputy sheriff or one of the highway patrolmen also told the father that the car was registered in his name, and that the car was his because Burton was a minor. The Iowa Highway Department made radio inquiry from the registration department in California as to the registration, and the answer they received was that the car was registered in the name of Estate of C. A. Gray. This was the previous owner, and the record of change had not been completed. In view of the statements with reference to ownership as above outlined, Ezra Raymond Moores in filing answer in the case of Farmers Insurance Exchange admitted the ownership. In his answer in the case of Frances Dempster he denied ownership, but admitted the car was registered in his name. On May 17, 1954, judgment was rendered in favor of Farmers Insurance Exchange by Hon. Bennett Cullison, District Judge, against Burton D. Moores and Ezra Raymond Moores for $1575. On October 1, 1954, judgment was rendered against the same parties in favor of Frances Dempster by Hon. Vernon Johnson, District Judge, in the amount of $9989.35. Defendants filed pleadings in the cases, although pleadings in Farmers Insurance Exchange case were not filed until after judgment. Defendants appeared by attorney, but not personally, in court for the trials.

By reason of his injuries in the accident Burton was not returned to his ship in San Diego. He was assigned to the Omaha area and was discharged on May 8, 1953. His shipmates gathered his personal belongings together, including a box of pictures, and mailed them back to him. When received he left them at his father's home. He did not examine them at the time, but on October 12, 1954, he looked through the box containing the pictures. In the box he found the registration certificate for the automobile and discovered the car was registered in the name of Burton D. Moores and not in the name of Ezra Raymond

Moores. He immediately took the certificate to his father, and his father took it to Logan to his present attorney. Since time had expired so that motion for new trial could not be filed under R. C. P. 236 as to Farmers Insurance Exchange case, nor under R. C. P. 244 as to Dempster case, defendant Ezra Raymond Moores filed petition in each case for vacation or modification of judgment, or for new trial under R. C. P. 252(f). It was stipulated between the parties that the two cases be consolidated for trial and that all evidence offered should apply in both cases. Hearing was held before Hon. Bennett Cullison, District Judge. Defendant Ezra Raymond Moores offered in evidence the deposition of Albert J. Veglia, Registrar of Vehicles, Department of Motor Vehicles, State of California. He testified that prior to March 25, 1952, the 1949 Ford four-door sedan was registered in the Estate of C. A. Gray. On March 25, 1952, the registration was transferred from the estate to Burton D. Moores. A registration certificate was issued to Burton on April 16, 1952. The record is silent as to when it was mailed. He testified the registration certificate was in the name of Burton D. Moores on May 9, 1952. He identified as Exhibit C a photostatic copy showing the car registered in the name of Burton D. Moores. Both Ezra Raymond Moores and Burton D. Moores testified as to finding the certificate on October 12 and bringing it on that date to Ezra's attorney. The father was a little uncertain as to the date, under cross-examination, but careful examination of all evidence of father and son established October 12 as the date when the certificate was found and delivered to the attorney. Ezra identified the original certificate, Exhibit 1, which was found on October 12, as being the original of Exhibit C, identified by Mr. Veglia.

On May 13, 1955, the trial court entered order granting new trials in both cases on the ground of newly discovered evidence. This only pertains to the father, Ezra; the judgments are in effect as to the son, Burton. From this order plaintiffs appeal.

I. The first matter we should consider in connection with a new trial case is the discretion which is granted to the trial judge. We have held in numerous cases the trial court has wide discretion and unless such discretion is abused this

court will not interfere. We have also held that we are more reluctant to interfere when a motion has been granted than when it has been denied. Mally v. Mally, 114 Iowa 309, 86 N.W. 262; Dobberstein v. Emmet County, 176 Iowa 96, 155 N.W. 815; Sheridan Bros. v. Dealy, 198 Iowa 877, 200 N.W. 335; Manders v. Dallam, 215 Iowa 137, 244 N.W. 724; White v. Zell, 224 Iowa 359, 276 N.W. 76; Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Ferguson-Diehl Constr. Co. v. Langloss, 239 Iowa 346, 30 N.W.2d 320; Westergard v. Des Moines Ry. Co., 243 Iowa 495, 52 N.W.2d 39; Loughman v. Couchman, 243 Iowa 718, 53 N.W.2d 286.

This general rule is conceded by counsel for appellants, but they allege the trial court abused his discretion. There is no conflict in the evidence as offered upon the hearing as to new trials concerning the fact of the newly discovered evidence, except identification of the certificate, which we will consider hereinafter. The matter of discretion of the court was considered in the rather early case of Mally v. Mally, supra, where the court said at page 313 of 114 Iowa: "A large discretion is vested in the trial court in matters of this kind. We are slow to reverse where a new trial is granted." Also in Sheridan Bros. v. Dealy, supra, at page 878 of 198 Iowa: "The granting of a new trial is a matter resting largely in the sound discretion of the trial court, and the exercise of this discretion will not be interfered with, where a new trial has been granted, unless it appears to have been abused." Five cases cited. In Thornton v. Boggs, 213 Iowa 849, 851, 239 N.W. 514, 515, we quoted with approval from Jelsma v. English, 210 Iowa 1065, 1068, 231 N.W. 304, 306, as follows: " 'We are more reluctant to interfere with the granting of a new trial than with the refusal to allow the relief. A trial court is vested with a large discretion when passing upon a motion for a new trial. Unless that discretion is abused, this court will not interfere. Such abuse must affirmatively appear.' "

In the recent case of Loughman v. Couchman, supra, we said at page 720 of 243 Iowa: "Of course the trial court has a good deal of discretion in granting a new trial and we will not interfere with such an order unless it is reasonably clear there was an abuse of discretion." (Cases cited.)

In Torrence v. Sharp, 246 Iowa 460, 464, 68 N.W.2d 85, 88, we said: "Appellants concede the rule to be that a trial court has wide judicial discretion in the granting of a new trial. As said in Dewey v. Chicago & N.W. R. Co., 31 Iowa 373, 378: 'They [trial courts] ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice.' It is also conceded that this court is more reluctant to interfere where a new trial is granted than where it is denied." (Cases cited.)

■ II. There are three general principles involved in cases where a new trial has been granted on the basis of newly discovered evidence, which are pertinent to this case, and which we should consider in determining whether the trial court has abused his discretion: (1) There must be a showing of diligence by the party moving for the new trial, or a reasonable excuse must be shown as to why the new evidence was not produced at the trial. (2) The new evidence must be material, and the probable effect such as to produce a different result on retrial. (3) The new evidence should not ordinarily impeach evidence already offered, although new trials have been approved where, under peculiar circumstances, some degree of impeachment is involved.

III. The question of diligence of defendant, or a reasonable excuse for not procuring the evidence which later developed, is very important where a new trial has been granted on the basis of newly discovered evidence. R. C. P. 252(f); Mally v. Mally, supra; Guth v. Bell, 153 Iowa 511, 133 N.W. 833, 42 L. R. A., N. S., 692, Ann. Cas. 1913E 142; Mayer v. Hamre, 162 Iowa 662, 144 N.W. 334; Mullong v. Mullong, 178 Iowa 552, 159 N.W. 994; Henderson v. Edwards, 191 Iowa 871, 183 N.W. 583, 16 A. L. R. 1090; Loughman v. Couchman, supra.

■ By the testimony of the son, Burton, and under statements made to the father by either deputy sheriff or highway patrolman, the father was convinced the car was registered in his name. He knew he had signed some papers about the car. Plaintiffs waited nearly two years before starting actions. Farmers Insurance Exchange case was tried promptly. Dempster

case was tried in September 1954 and judgment rendered October 1. On the basis of these conditions and time elements, was there a lack of diligence on the part of Ezra, not excused by the circumstances? Considering his vocation and the definite statements made to him, and by whom they were made, it is logical that he should be convinced as to the registration of the car in his name. Lack of further inquiry was not a lack of diligence. He had reasonable excuse for not making further inquiry. The father was so convinced as to the car being in his name that neither he nor the son made personal appearance in court when the cases were tried. The testimony shows his first attorney told him there was no use defending on the basis of ownership and his only hope might be to hold the judgment down. Defendants would not be able to offer any material evidence in connection with keeping the judgment down in either case.

In case of Mullong v. Mullong, supra, we considered a situation somewhat similar to the facts of this case. Defendant had lost a receipt and was not able to produce and offer it in evidence when the case was tried. Concerning the receipt, and in his affidavit in support of motion for new trial, he stated at page 553 of 178 Iowa:

"* * * 'I further state that, while uncertain about the matter, I thought I had a receipt for the money paid by me, as herein stated, but I could not find the same before the trial of said action, having searched for the same through my papers and where I usually kept my papers and receipts. I further state that the said receipt must have been inside of some other paper, as, when I emptied out all the papers in a valise in which the same was, it fell out upon the floor from other papers. I further state that I searched through the same papers for the receipt before the trial of said action and did not find the same, and decided that it had been lost.' " .

The trial court failed to grant a new trial, but this court reversed the case on the basis of newly discovered evidence and stated, as part of the decision (pages 553, 554), the following:

"This receipt does not bear any date. It was found, accord-

ing to the showing made, by accident, in looking over some old papers; and the finding thereof is amply sustained by the record. * * * Plaintiff claims that the trial court was right in denying the motion for new trial, because * * * defendant was a witness upon the trial, and made no mention of any receipt; and, finally, because he did not exercise proper diligence in discovering the paper. * * * It is true that defendant was a witness upon the original trial, and that he said nothing about a receipt; but this is explained in his motion for a new trial, as will be observed from the quotation already made. The same observation may be made with reference to the question of defendant's diligence. We think it was sufficient."

In 66 C. J. S., New Trial, section 108, on page 306, we find the following statement: "A new trial, asked on the ground of newly discovered evidence, is properly refused where failure to discover and to produce the evidence at the former trial is not sufficiently excused. * * * the fact that a party moving for a new trial for newly discovered evidence, consisting of a receipt for the debt sued on, said nothing in his testimony of the receipt does not preclude a new trial if satisfactorily explained by showing that he had thought it lost; and in other cases the excuse for apparent lack of diligence has been held sufficient."

We held in Mayer v. Hamre, supra, that the necessary elements, which must be shown to justify a new trial, depend largely on the nature of the evidence, the relationship of the parties, and the character of the suit. The nature of the evidence in this case was the circumstance of finding the certificate showing the son to be the registered owner of the car, and the necessary proof to offer the certificate in evidence. Taking into consideration the evidence, the parties, and the character of the suits, we hold in view of statements made to the father immediately after the accident, he was excused from making further inquiry concerning the ownership of the car.

IV. The question of materiality of the new evidence proposed and probability of a different result is of importance. R. C. P. 252(f); Dobberstein v. Emmet County and Henderson v. Edwards, both supra; Wilbur v. Iowa Power & Light Co., 223 Iowa 1349, 275 N.W. 43; Larson v. Meyer & Meyer, 227

Iowa 512, 288 N.W. 663; Loughman v. Couchman and Westergard v. Des Moines Ry. Co., both supra.

 There is no doubt about materiality of the new evidence offered at the hearing on the petitions for new trial as far as the defendant Ezra Raymond Moores is concerned. The primary question in the cases was whether the car was registered in his name. In the trials the registration appeared in the name of the father; at the hearing on motion for new trial it appeared in the name of the son. As far as the defendant Ezra was concerned the new evidence was eminently material.

This court cannot state nor decide the outcome of the new trial, but the question of the probable effect of the new evidence should receive consideration. If the new evidence proffered by affidavit or on hearing is insignificant, or has no weight as to issues in the case, the motion should be overruled. In these cases we find a situation where a different result is reasonably probable on retrial. The court considered this question carefully in Henderson v. Edwards, supra, stating at page 873 of 191 Iowa:

"If it can be said that, in all probability, the newly discovered evidence will not affect the result in case of a second trial, then the motion should be denied. If the proffered evidence presents material facts germane to the issue in controversy, which, considered with the evidence presented on the trial, might cause a jury to take the other view, then the motion should be sustained. Dobberstein v. Emmet County, 176 Iowa 96 [155 N.W. 815]. True, this is speculative, but nevertheless the rule stated is a reasonably safe guide."

In Loughman v. Couchman, supra, we said at page 720 of 243 Iowa, page 288 of 53 N.W.2d: "It is also elementary that a new trial should not be granted for newly discovered evidence unless a different result because thereof is reasonably probable."

 V. In many cases where the question of new trial on the basis of new evidence has been considered, this court has stated that if the new evidence is an impeachment of testimony previously offered, and nothing more, it should not be considered as basis for new trial. Where other elements are involved, however, and the matter of impeachment is not definite

and in some cases only incidental, we have not considered it as detrimental to the granting of a new trial. Dobberstein v. Emmet County and Henderson v. Edwards, both supra; Simons v. Harris, 215 Iowa 479, 245 N.W. 875; Sheridan Bros. v. Dealy, supra; Elmore v. Des Moines City Railway Co., 207 Iowa 862, 224 N.W. 28; Westergard v. Des Moines Ry. Co., supra. The distinction as to whether or not impeachment is important in connection with granting of a new trial pertains primarily to credibility of the testimony of the witness or witnesses at the first trial. All standard dictionaries give as definition of impeachment the statement: "To challenge the credibility of:" Where there is change in the evidence based on an innocent error by witnesses the theory of impeachment is not controlling in considering the matter of the granting of a new trial. Neither father nor son was a witness at the trials, so there could be no impeachment of evidence offered by them. They had said in pleadings, coroner's inquest and answers to interrogatories that the car was registered in name of the father. These were honest mistakes. When they made the statements both were of the opinion that such was the fact. The new evidence demonstrated their error. They did not deliberately perjure themselves. They thought what they said was the truth. We considered this question in case of Sheridan Bros. v. Dealy, supra, stating at page 879 of 198 Iowa:

"Where a motion for a new trial is based upon the ground of newly discovered evidence, the fact that the newly discovered evidence, though going to disprove the claim of the plaintiff, also incidentally tends to impeach his testimony as a witness, does not require the overruling of the motion. Henderson v. Edwards, 191 Iowa 871 [183 N.W. 583, 16 A. L. R. 1090]. And where the showing tends to establish misconduct on the part of the prevailing party, relief is not, we think, to be denied merely because it also tends to impeach the testimony of the plaintiff."

In Westergard v. Des Moines Ry. Co., supra, we gave attention to the question of degree and nature of impeachment in the following language at page 499 of 243 Iowa, page 42 of 52 N.W.2d: "Nor do we think there is substance in the complaint the evidence offered is wholly impeaching. Much of the

evidence in any case necessarily impeaches the truth of that introduced by the opposing party; but it is also generally, as here, substantive and tends to prove the facts contended for by the offeror or to disprove the case made by the opposition."

VI. We have often stated new trials should be sparingly granted, because on a broad basis of justice it is important that litigation be concluded. Rare occasions arise when new conditions appear, and where justice dictates another trial should be held. Our legislative enactments and our rules have provided for such contingency. A general statement in support of this theory appears in one of our older cases. In Dobberstein v. Emmet County, supra, we said at page 103 of 176 Iowa: "If, upon such examination, it shall be made to appear that the truth of the essential facts on which the controversy turns is involved in serious doubt, and that the alleged newly discovered evidence is of a character to aid materially in developing the very truth of the matter, the court will grant the rehearing much more readily than where the evidence leaves little room for doubt that the judgment as rendered effectuates substantial justice; and this is done, not because of any reversible error of the trial court in rendering the judgment, but because the court did not have the benefit of material evidence which now seems obtainable and may, on another trial, lead to a different result."

VII. Counsel for appellants contend the court erred in admitting Exhibit 1 over their objection. This exhibit was the registration certificate as to the Ford car registered in the name of Burton D. Moores, the son. They argue defendant failed to prove the car involved in the accident was the same car as referred to in the exhibit. We disagree with this position. In the deposition of Albert J. Veglia, Registrar of Vehicles for the state of California, we find the following question and answer:

"Q. Did the State of California issue a new Registration Certificate for said vehicle at the time of said transfer? If so, and if possible, attach hereto and mark as Exhibit 'C' a photostatic copy of such new registration certificate. A. Yes. A new registration card was issued on April 16, 1952, to Burton D. Moores, USS Badoeng Strait CVE-116, c/o Fleet Post Office, San Diego, California. Attached and marked Exhibit 'C' is a

photostatic copy of a facsimile copy on record of the ownership and registration certificate issued on April 16, 1952."

The pertinent information on Exhibit C is the following: "STATE of CALIFORNIA

Department of Motor Vehicles

Ownership * * * MOORES, BURTON D.

USS BADOENG STRAIT, c/o Fleet PO San Diego, Calif. * * * 98BA180314 Ford * * * Yr. 49 * * *."

Ezra Raymond Moores testified as follows:

"Q. I hand you what the court reporter has marked Exhibit No. 1 and ask you to state whether or not that is the registration certificate to which you refer as having come into your hands on October 12th, 1954. A. It is. (Exhibit 1 is the registered owner's copy of Exhibit C attached to the deposition of Albert J. Veglia, the words and figures thereof being identical to said Exhibit C * * *.)"

Burton D. Moores, the son, testified as follows:

"Q. On the basis of what you now know, I want you to state who was the owner of the Ford automobile you were driving that was involved in this accident on May 9th, 1952. A. It belonged to me."

We hold this testimony is sufficient identification as between the car involved in the accident and the car referred to in Exhibits C and 1. This certificate is more definitely identified than evidence we have heretofore approved with reference to hospital records and long-distance telephone tickets. Gearhart v. Des Moines R. Co., 237 Iowa 213, 21 N.W.2d 569, 571; Olesen v. Henningsen, 247 Iowa 883, 77 N.W.2d 40.

The discretion of the trial court was not abused, and his order granting a new trial to defendant Ezra Raymond Moores in both cases is affirmed.—Affirmed.

All JUSTICES concur.