Calvin **YODER** and **Marietta Yoder,**
**Appellants,**

v.

**IOWA POWER AND LIGHT COMPANY,**
**Appellee,**

**Omar R. Yoder et al., Defendants.**

**No. 55821.**

Supreme Court of Iowa.

Feb. 20, 1974.

John D. Randall, Cedar Rapids, and Lloyd A. Epley, Iowa City for appellants.

William M. Tucker and Bruce Walker, Iowa City, for appellee Iowa Power and Light Co.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

A right-of-way easement for an electric transmission line was acquired by defendant Iowa Power and Light Company over and across certain lands belonging to plaintiffs. Plaintiffs appealed to the district court from the condemnation award of the sheriff's jury, and now bring this appeal claiming error in certain respects to be hereinafter specifically referred to.

Plaintiffs are the equitable owners of a 200-acre tract in Sharon Township in Johnson County, which they purchased on contract in 1958 from Omar Yoder, the father of plaintiff Calvin Yoder. They also hold fee title to a 42-acre tract lying to the south and west but contiguous and adjacent to the 200-acre tract. This smaller acreage was acquired by warranty deed in 1965. At the time of the condemnation proceedings the 42-acre tract was encumbered by a mortgage running in favor of defendant Federal Land Bank. The entire 242-acre tract, being made up of the two separate tracts above referred to, was farmed at all times pertinent to the matter before us by the plaintiffs as one agricultural unit.

Defendant, Iowa Power and Light Company, sought to and did acquire by condemnation a strip of land 150 feet wide running along the northerly portion of the 200-acre tract, first above referred to, for

the purpose of construction, maintenance and operation of a transmission line. Four two-pole transmission structures were subsequently erected on the easement acquired from plaintiffs. This transmission line did not traverse any portion of the land encumbered by the mortgage running in favor of Federal Land Bank.

The farm in question lies immediately north of the town of Sharon Center in Johnson County, is within the Iowa City school district, and is subject to the urban influence of the city of Iowa City for developmental purposes. Plaintiffs had sold a residential tract of 4.6 acres from the south end of their farm in 1966 for $1500 an acre.

The condemnation proceedings instituted by Iowa Power and Light resulted in an award being made by the sheriff's jury on January 8, 1968. Notice of the condemnation proceedings was accomplished on plaintiffs and on defendants Omar Yoder (the contract vendor in the contract for the sale of the 200-acre tract with the plaintiffs), Johnson County, Iowa, and the Central Iowa Production Credit Association. No notice of the condemnation proceedings was afforded Federal Land Bank Association.

In their petition filed in the district court, plaintiffs alleged the facts of the derivation of title to their two separate tracts of land, and alleged the 42-acre tract is a part of the same farm as their 200-acre tract acquired by them on contract from Omar Yoder, and that the notice served on plaintiffs prior to the condemnation proceedings made no reference to the 42-acre tract. They alleged that because the notice excluded from the description of plaintiffs' land said 42-acre tract, the notice was improper in that it failed to properly describe the real estate subject to damages. They further alleged that no notice of condemnation was served upon Federal Land Bank Association, the mortgagee of the 42-acre tract, and that failure to serve the Land Bank as an interested party

and lienholder resulted in illegal and improper proceedings and that the Power Company should be enjoined from using the property condemned.

Following filing of plaintiffs' petition, and before answer, defendant Iowa Power and Light Company filed its application for separate adjudication of law points in which it prayed the court to adjudicate:

(1) Whether for purposes of the appeal the two tracts of land separately described in plaintiffs' petition are to be considered as two separate parcels of land or are to be considered as one contiguous tract for the purpose of assessment of damages, and

(2) Whether the failure to give notice to one of the interested parties of the second described and excluded real estate constitutes a jurisdictional defect in the condemnation proceedings thereby making said proceedings a nullity.

After hearing on the defendant Power and Light Company's motion for separate adjudication of law points, the court entered its ruling thereon, and held and determined:

1. That for purposes of the appeal the two tracts of land described in the plaintiffs' petition are to be considered as one contiguous tract for the purpose of assessment of damages and the question as to damages will be the difference in value of the entire 242 acres before and after the condemnation and taking.

2. The failure to give notice to the Federal Land Bank because of the fact it held a mortgage or does hold a mortgage on the 42-acre tract does not constitute a jurisdictional defect in the condemnation proceedings because of the fact that the easement right-of-way which was condemned does not actually cross the 42-acre tract and for that reason it was not necessary to give notice to the Federal Land Bank.

The cause thereupon proceeded to trial to a jury, resulting in an award of dam-

ages by the jury in the amount of $3000, following which the plaintiffs filed their motion for new trial.

On the trial of the case a witness for defendant Iowa Power and Light Company, one Waters, a value witness, testified to recollection of a specific sale of farmlands wherein not only did a proposed high line going over the farm have no effect in reducing the value of the farm, but that the prospective purchaser who later bought the farm not only knew of the proposed high line but despite such knowledge, increased his offer to purchase the farm, and in addition the purchaser permitted the then owner to keep the damages. Waters further testified the sale was of the Daniel H. Bender farm and had been made by his real estate office. To their motion for new trial the plaintiffs attached an affidavit of Daniel H. Bender, from which it appears that while he [Bender] had sold on contract the buildings off the farm referred to by Waters, together with a small acreage, he had not sold the portion of the farm over which the high line ran, contrary to Waters' testimony. Plaintiffs testified there was no way by which with any diligence they could have anticipated that the sale of any portion of the Bender farm would be used to illustrate the fact claimed by Waters that the high line did not depreciate the value of the farm, and because of the use of such evidence and the effect thereon plaintiffs were prejudiced and the jury was permitted to consider as fact matters which were not fact.

In ruling on the motion for new trial, the court held the claimed newly-discovered matter was evidence of an impeaching character only and was not of such substance as to lead the court to believe that it would produce a substantial change in the verdict in the event it would be available if a new trial were granted or if it had been presented during the course of the first trial. A different result in the opinion of the court would not be reasonably probable. The court further held the plaintiffs had a full and fair trial on the issues

formed and the court was of the opinion the verdict reflected substantial justice between the parties.

Plaintiffs present the following issues for review which they claim necessitate reversal:

1. Trial court had no jurisdiction to hear and determine the appeal from the condemnation commission's award for the reason that a lienholder [Federal Land Bank Association] had not been made a party to the condemnation and therefore the trial court should have sustained the legal defense pled by plaintiffs and should have determined on the application of the Power Company for adjudication of law points that the court had no jurisdiction.

2. The trial court abused its discretion in sustaining the objection of Iowa Power to testimony of the expert witnesses for the plaintiffs as to comparable sales where the basis of such ruling was the size of the tracts and in refusing to permit plaintiffs to present their theory of the highest and best use of their lands.

3. Trial court erred in overruling plaintiffs' motion for new trial for the reason that the newly-discovered evidence would have tended to discredit the appraiser-value witness for the Power Company and would have changed the verdict of the jury.

I. There is no disagreement between the parties of this appeal as to the status of the Federal Land Bank. While plaintiffs' farm was comprised in the aggregate of approximately 242 acres, only 42 acres of the same were encumbered by the mortgage of the Land Bank. The easement sought to be acquired by the Power Company did not traverse the premises encumbered by Yoders' mortgage to the Land Bank.

Plaintiffs bottom their contention the court lacked jurisdiction to proceed with the matter on the fact that the court's continual reference in the record to the premises of the plaintiffs as a 240-acre farm,

and its ruling on the motion for adjudication of law points as well as the theory upon which the case was tried, leaves no room for doubt the unit involved was a 240-acre unit.

In support of their first issue presented for review, plaintiffs cite Carmichael v. Iowa State Highway Comm., 156 N.W.2d 332 (Iowa 1968) and Reeder v. City of Cedar Rapids, 201 N.W.2d 71 (Iowa 1972).

We are unable to view the citations of authority as supportive of plaintiffs' contention. Nor can we view the following cases cited by plaintiffs in their reply brief as touching upon the factual situation in the matter before us, namely: Bisenius v. Palo Alto County, 256 Iowa 196, 127 N.W. 2d 128; Johnson v. Iowa State Highway Comm., 257 Iowa 810, 134 N.W.2d 916; Merritt v. Interstate Power Co., 261 Iowa 174, 153 N.W.2d 489; and 21 C.J.S. Courts § 70, p. 108.

■ Clearly, the Federal Land Bank Association had no interest in the land over and across which the Power Company was seeking to acquire an easement. It therefore was not entitled to notice of the condemnation proceedings and the lack of notice to them did not constitute a jurisdictional defect. The ruling of the trial court on the Power Company's motion for adjudication of law points and on plaintiffs' motion for new trial in this regard was correct.

II. Plaintiffs' second issue stated for review involves an evidentiary question going to the amount of plaintiffs' damages. The basis for awards of damages in condemnation cases has been somewhat standardized by our prior holdings. See Jones v. Iowa State Highway Comm., 259 Iowa 616, 621–622, 144 N.W.2d 277, 280:

"The measure of damages for a partial taking is the difference in the fair market value of the subject property immediately before and immediately after condemnation. The fair market value of land is the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept. A condemnee is damaged to the extent his property is diminished in value by the condemnation." (citations)

■ We held that evidence of the sale price of comparable real estate is admissible upon the issue of fair market value of property in condemnation proceedings in Redfield v. Iowa State Highway Comm., 251 Iowa 332, 99 N.W.2d 413. This general rule was extended in Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 986, 108 N.W.2d 487, 492:

"Other similar sales need not be identical but must have a resemblance in order to be shown in evidence. Size, use, location and character of the land and time, mode and nature of the sale all have a bearing on the admissibility of such evidence. Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible." (citations)

Plaintiffs sought to offer into evidence the sale prices of seven separate tracts, all small parcels taken from larger acreages:

| | | |
|---|---|---|
| Kaufman to Donahue, | 25 | acres sold. |
| Land Improvement Company to John Buchanan, | | |
| | 20.79 | acres sold. |
| Kaufman to Edwards, | 10.1 | acres sold. |
| Kaufman to Hein, | 10.8 | acres sold. |
| Kaufman to Weeber, | 6 | acres sold. |
| Kaufman to Zahradnek, | 10.1 | acres sold. |
| Land Improvement Company to Walter Jensen, | | |
| | 11 | acres sold. |

Objections to evidence of such sales were sustained by the court on the basis no comparability was shown in size of the tracts above mentioned to the plaintiffs' farm. Plaintiffs contend the rulings of the trial court in this regard were erroneous and an abuse of the court's discretion. After plaintiffs had attempted to lay a proper foundation for the reception of evidence relative to the sale by Kaufman to Donahue, in sustaining defendants' objec-

tion to the evidence of such sale, the court made the following ruling:

"* * * The reason the Court has ruled the way it is ruling is this: that we are involved here with the measure of damages which takes into consideration the fair and reasonable value of this property as a whole as it existed at the time of condemnation and that the difference in value of the fair and reasonable value of the property as a whole as it existed immediately before condemnation and the fair and reasonable value of the property immediately after condemnation as burdened by the easement. We are dealing with approximately a 240 acre piece of ground.

"Now, if we go to comparables we should find a comparable before condemnation. We are talking about comparable before condemnation, comparable to 240 acres, 180 acres, 290, 320, in other words, a sale of an agricultural unit as a farm, not the sale of a portion of that farm taken off for acreage development. *Now, I think that one of the factors in a comparable would be the value of that farm not merely as an agricultural entity but the value of that farm considering the fact that it was valuable for acreage development and it did in fact have acreage developments taken off of it.*" (emphasis supplied).

We have spoken to a somewhat analogous situation on prior occasions. See *Bellow v. Iowa State Highway Comm.*, 171 N.W.2d 284, at 292 (Iowa 1969):

"In *Hoeft v. State*, 221 Iowa 694, 697–698, 266 N.W. 571, 573, 104 A.L.R. 1008, we said:

"'It is * * * the settled rule of law in this state that, where an entire tract of land consisting of several subdivisions is used in its entirety as a farm, it is not proper, in determining the damages, to show the reasonable market value before and after condemnation of the various tracts separately. * * * [Citing authorities].

"'In *Welton v. [Iowa] State Highway Commission*, 211 Iowa, 625, loc. cit. 632, 233 N.W. 876, 881, this court said:

"'"The law of eminent domain does not contemplate that in fixing the value of a farm plaintiff may cut to pieces his farm and a piecemeal valuation be taken as the basis of valuation of an entire tract before and after condemnation. It is the value as a whole before and after the condemnation and not the value in parcels. * * * *Welton's farm was a single farm, and so treated by both parties.* Neither party claims that the 200 acres (approximately) consisted of two farms. Plaintiff was entitled to have his farm valued as a whole and his damage assessed on that basis."'"

While the foregoing citations approach the issue from a slightly different viewpoint, it is obvious to us they lend weight and support to the court's ruling on the evidence by which the plaintiffs attempted to show the sale price of small tracts of land. It could be argued that by permitting the evidence of the sale of the small tracts, the plaintiffs could have theorized the fair market value of their property should be composed of the sum of the sale prices of 24 10-acre residential plots.

In Nichols on Eminent Domain, § 23.-31(3), Vol. 5, 3d Ed., we find:

"It is not necessarily objectionable that the lot of land, the price of which it is sought to put in evidence, is of different size and shape from the lot taken; nevertheless, the court may properly exclude evidence of the price paid for similar land in close proximity to the land taken if the lot sold is much smaller than the land in controversy. A large piece of land cannot usually be applied profitably to the same uses as a small piece, and if the large piece is to be cut up into lots of the same size as the small piece, the length of time necessary to dispose of the lots to different purchasers is so uncertain that the price at which one such lot would sell multiplied by the number

of lots is no criterion of the present value of the entire parcel."

See also Crozier v. Iowa-Illinois Gas & Electric Co., 165 N.W.2d 833, 834–835 (Iowa 1969); Martinson v. Iowa State Highway Comm., 257 Iowa 687, 694–695, 134 N.W.2d 340, 344; Belle v. Iowa State Highway Comm., 256 Iowa 43, 47–48, 126 N.W.2d 311, 313–314.

■ We are unable to say trial court abused its discretion by refusing to permit plaintiffs' evidence of the sales of the small tracts above referred to. Nor are we able to agree with plaintiffs that by so excluding such evidence the trial court was denying to plaintiffs the right to have evidence of the highest and best use of their land, namely, developmental purposes, placed before the jury. The court's extended and explanatory ruling set out above adequately meets plaintiffs' contentions.

III. In plaintiffs' third and last issue presented for review they contend trial court erred in overruling plaintiffs' motion for new trial based on what plaintiffs assert is newly-discovered evidence.

Appraisers, or value witnesses, testified for plaintiffs and for the Power Company. The witness Waters, an appraiser for Iowa Power & Light Company, on direct examination stated that in his experience during the period of time when a utility easement was being acquired over a property south of Iowa City, increased interest in the farm was generated and the value of the farm increased. He identified the property as the Daniel Bender farm. On cross-examination, Waters advanced his opinion that the imposition of the utility easement on the Bender farm had no effect on the sale price thereof. He reaffirmed this statement on his redirect examination, with the qualifying statement that he was unsure of the date of sale of the Bender property, recalling that in his best judgment the sale was in 1968 or 1969.

After the verdict was returned, plaintiffs filed a motion for new trial, incorporating by reference an affidavit attached thereto of Daniel Bender stating that he had sold only a small acreage and the buildings from his farm referred to by Mr. Waters, that the sale was in 1966, and that an easement was acquired over a portion of the Bender farm in 1965 and 1966 by a power company but that the portion of the farm over which the easement was acquired had not been sold.

Plaintiffs' motion for new trial was overruled, and we must now consider whether the representations in the Bender affidavit attached to the motion for new trial required the trial court to sustain the motion.

Rule 344(f)(3), Rules of Civil Procedure, provides:

"In ruling upon motions for new trial the trial court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties."

In Vojak v. Jensen, 161 N.W.2d 100, 105–106 (Iowa 1968), this court said:

"The granting of a new trial is largely discretionary, and an order either granting or refusing one will be set aside only upon a clear showing of abuse of such discretion." (Citations).

And in Wilkes v. Iowa State Highway Comm., 186 N.W.2d 604, 607 (Iowa 1971) this court stated:

"It still remains, however, courts do not favor the granting of a new trial because of newly discovered evidence. (Citations).

"Furthermore, 'abuse of discretion' means no discretion to do what was done. Verdicts should not be set aside lightly and the court, in granting a new trial, must be sure there exists sufficient cause to support the exercise of such discretion. Every litigant is entitled to a fair trial, but only one." (Citations).

See also Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp., 210 N.W. 2d 532, 536 (Iowa 1973).

The allegedly newly-discovered evidence could not be offered as affirmative proof on any issue in this case. The statements contained in the affidavit are relevant only to discrediting the appraiser, Waters. In the course of trial, there is no doubt that impeachment by introduction of such contradictory facts would be permissible. See 3A Wigmore on Evidence (Chadbourn Rev.1970), § 1000 et seq.

 To support their motion for new trial plaintiffs were required to show that the evidence was discovered following trial, that it was not such as could have been discovered before conclusion of the trial in the exercise of diligence, that it was material to the issue and *not merely cumulative or impeaching,* and finally that such evidence would probably change the result if a new trial were granted. See Vanden Berg v. Wolfe, 196 N.W.2d 420, 422 (Iowa 1973); Farmers Insurance Exchange v. Moores, 247 Iowa 1181, 1187, 78 N.W.2d 518, 523.

In ruling on the motion for new trial, the court held:

"Paragraph 7 [the paragraph in which reference is made to the Bender affidavit] raises an issue relative to a newly-discovered matter which would contradict an assertion by one of Plaintiffs' valuation witnesses in the course of his direct testimony. The newly-discovered matter is evidence of an impeaching character and is not of such substance which leads the Court to believe that it would produce a substantial change in the verdict in the event that it would be available in case a new trial were granted or if it had been presented during the course of the first trial. A different result, in the opinion of the Court, would not be reasonably probable.

"There must be repose to litigation. The Plaintiffs had a full and fair trial on the issues formed and the Court is of the opinion that the verdict reflected substantial justice between the parties."

Plaintiffs contend the affidavit of Bender would serve to contradict the witness Waters in connection with all references made in his testimony to the effect or lack of effect of a power easement over and across agricultural lands, which plaintiffs contend bore directly on a material issue in the case. Plaintiffs cite authorities which hold that newly-discovered evidence which successfully contradicts a trial witness may be cause for allowing a new trial, although the evidence may incidentally impeach the witness. We defer to the trial court's judgment in this matter and conclude that the Bender affidavit would do nothing more than impeach the testimony of Waters. We hold the trial court was correct in its refusal to grant a new trial.

We find no error in the record and affirm the trial court.

Affirmed.