ROTHSTEIN ET AL., APPELLANTS, *v.* ROTHSTEIN ET AL., APPELLEES.[*]

(No. 348—Decided October 17, 1958.)

Mr. *Francis M. Marley,* for appellants.
Mr. *Harry W. Frick* and *Messrs. Hunt & Ziskind,* for appellees.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Seneca County dismissing plaintiffs' petition for vacation of an earlier judg-

[*]Motion to certify the record overruled, March 25, 1959.

ment of that court and for a new trial, the petition having been filed after the term at which the earlier judgment was made.

The judgment in question was entered pursuant to a jury verdict that a purported codicil to the will of Myer M. Rothstein, deceased, was a valid codicil to the will. The appellants are the same individuals who were parties plaintiff in the action to contest the codicil. The validity of the will to which the codicil pertains has never been questioned.

The ground of contest in the original action was "that the codicil allegedly executed on the 12th day of December, 1952, was not executed on said date, but is a fraudulent, fictitious and forged document." In the trial thereof two checks, purporting to have been drawn by the testator and dated November 28, 1952, and December 21, 1952, respectively, were offered by plaintiffs as reflecting on the validity of the signature on the codicil and were admitted in evidence. The subscribing witnesses and other of defendants' witnesses testified to the actual execution of the codicil, and, further, that on the same day on which the codicil was executed the testator signed some checks. One of the subscribing witnesses and the surviving spouse testified that one of the checks then signed by endorsing, was a check for rent due the testator from the Cities Service Company. None of such checks were produced or offered in evidence. There was also considerable evidence as to the testator's physical condition and his testamentary capacity, and as to other circumstances existing at and about the time the codicil was allegedly executed.

In this action to vacate the judgment determining the codicil valid, plaintiffs claim discovery of new and material evidence affecting the merits of the original action. The new evidence claimed by plaintiffs and offered at the hearing of their petition for a new trial consists of numerous cancelled checks purporting to have been drawn or endorsed by the decedent, some of which plaintiffs assert are valid and others which plaintiffs claim are forged. The petition alleges, and the evidence is to the effect, that the checks purporting to have been drawn by decedent were at the time of the original trial in the possession of the then administrator with the will annexed of

the estate of decedent; and it also appears in evidence that he (the administrator) resided in and had his office in the county and city wherein the original action came to trial, and had also testified as a witness at that trial. Also offered as additional evidence are checks drawn by the Cities Service Company payable to decedent dated November 15, 1952, and December 15, 1952, respectively, and bearing endorsements purporting to be those of decedent. These checks at the time of trial of the original action were in the possession of the Cities Service Company at its office in Cleveland, Ohio. Plaintiffs claim the endorsement on the later of these two checks to be forged.

At the hearing of the petition for a new trial, plaintiffs called an alleged handwriting expert who testified that in his opinion the signatures on the codicil and on certain of the checks were not the signatures of decedent; and the defendants offered the testimony of another alleged handwriting expert who testified that in his opinion all the signatures on the various documents purporting to be those of the decedent were genuine. Neither at the original trial nor at the hearing of the petition for a new trial was any direct evidence offered by the plaintiffs as to the identity of the person or persons who inscribed the signatures which the plaintiffs claim to have been forged.

Plaintiffs assign error in the following particulars:

"1. Fraud intervened in the original trial of this matter, which resulted in the jury arriving at a verdict different than would have resulted without such fraud.

"2. Newly discovered evidence, material to these plaintiff-appellants, which with reasonable diligence they could not have discovered and produced at the trial.

"3. The final order and judgment herein were against the manifest weight of the evidence.

"4. The verdict and judgment of the court below were contrary to law."

Plaintiffs' first assignment is based on the proposition that the successful party in the contest action, in particular the surviving spouse, practiced fraud when she and one of the subscribing witnesses testified that decedent had endorsed a Cities Service rent check on December 12, 1952, the same date on which the codicil was purportedly executed.

The judgment of the lower court dismissing plaintiffs' petition for a new trial is consistent with a determination by that court, after weighing the evidence, that there was no fraud practiced by the successful party in obtaining the judgment in the original action. This was a mixed question of law and fact to be determined by the lower court, and the evidence of fraud had to be clear and convincing before the court could set the judgment aside. See *In the Matter of Veselich, a Minor,* 22 Ohio App., 528, at page 533, 154 N. E., 55. On an appeal on questions of law only, an appellate court will not disturb the determination of the trial court that there was no fraud practiced by the successful party in obtaining the judgment, so long as there is a conflict of evidence whereby reasonable men might honestly vary in their conclusions respecting this issue, and so long as there is no undisputed fact establishing fraud as a matter of law.

The pertinent testimony of the subscribing witness, Joseph Griggs, which the plaintiffs claim to be fraudulent, is as follows, with emphasis and bracketed explanation added:

"I had already eaten my breakfast, and I was thinking I would go to work. There was some conversation and Aunt Lora [the surviving spouse] said there were some things she would like to have me take care of. She said could you take care of that for me? I said yes, I could. I asked her what is the nature of the business? She said, 'Well, we have a check that has to be endorsed and cashed, and Uncle Myer [the testator] will have to endorse this check.' So my sister-in-law was in the bedroom and watching my uncle getting ready to get up and eat his breakfast. He had a chair there he preferably liked to sit in. He never gave me a reason. I was back and forth in the bedroom to see how she was getting along with him. He came out and sat in that chair. He had a few days growth of whiskers and he asked me if I would shave him and I said, yes, and I shaved him. I *believe* while I was shaving him my sister-in-law was preparing his breakfast. After he was shaved, I *believe* his breakfast was brought in and he ate it. He seemed concerned about his payment on a mortgage, but I don't know or I can't *recall* whether that payment was made that day or not,

but I do *recall* that there was something about *a check* that he would have to endorse so that I could go up and get the cash for Aunt Loretta and him. After he endorsed the check, I *believe* I wrote one of the names and he signed it. After that was all done my aunt asked him if he was going to sign the codicil.

"* * *

"This one check that I *remember* specifically was the check he had to endorse from the City [*sic*] Service Company, and he endorsed it, and I took it to the bank and brought it back to my aunt and gave it to her.

"* * *

"I don't *recollect* it [a check purporting to have been payable to the loan company in Tiffin under date of December 12, 1952]. This check to the city service, and one other check was wrote out."

The pertinent testimony of the surviving spouse which the plaintiffs claim to be fraudulent is as follows:

"279. After he finished breakfast what did he do? A. Why after that he wanted to sign those checks that morning.

"280. Did you see him sign checks? A. Yes.

"281. How many checks did he sign? A. Two checks were made out.

"282. This is December 12, 1952, that you are talking about? A. Yes, one was signed that come in by rent for City [*sic*] Service."

In determining the question of whether the successful party had practiced any fraud, the lower court also had before it the testimony of the two subscribing witnesses, the surviving spouse, and the wife of one of the subscribing witnesses, who testified directly and positively that they were present and saw the decedent execute the codicil to his will on December 12, 1952. The only testimony directly to the contrary was that of Sadie Eglin, one of the plaintiffs, who testified that the testator did not sign any papers "on the morning of December 12th." There was no direct testimony of any conspiracy or plan by anyone to practice a fraud. The only other evidence bearing on fraud, either at the original trial or at the hearing of the petition for a new

trial, was the conflicting evidence of the alleged handwriting experts, and various other witnesses who claimed familiarity with testator's signature, as to the validity of the signatures on the various documents.

The trial of the original action commenced on February 25, 1954, more than 14 months after the date of the codicil.

Were we to accept plaintiffs' hypothesis that the Cities Service check mentioned by the witnesses could not have been signed on December 12 because it was not issued until December 15, it is apparent that the quoted testimony, when considered by itself, is, like much testimony, based on recollection and belief, which after a period of more than 14 months could be faulty without being fraudulent. Moreover, the testimony related to facts merely incidental to, and did not bear directly on, the issue of whether the codicil itself was signed by the testator. This and any other evidence which might have any bearing on fraud was conflicting, and reasonable men might honestly vary in their conclusions respecting such issue. Nor is there any undisputed fact in evidence on which this court could conclude that fraud existed as a matter of law.

We cannot, therefore, reverse the judgment of the lower court on the ground of fraud practiced by the successful party.

Plaintiffs' first assignment of error is also based on the statutory ground that a judgment obtained in whole or in part by false testimony on the part of the successful party, or any witness in his behalf, which ordinary prudence could not have anticipated or guarded against, should be vacated and a new trial granted. See subdivision (J) of Section 2325.01, Revised Code. Suffice it to say that this ground is qualified by the additional statutory requirement that "the guilty party has been convicted," and the record must affirmatively show such conviction. *Mason* v. *Tremayne*, 115 Ohio St., 398, 154 N. E., 732. The record of this cause does not affirmatively show that any witness in the original action has ever been convicted of rendering false testimony. Indeed, plaintiffs acknowledge in their brief that Joseph Griggs is now deceased and was never charged or convicted, and that no charge of perjury has ever been filed against the surviving spouse.

As to plaintiffs' second assignment of error, there are well established rules in Ohio as to granting a new trial on the ground of newly discovered evidence. In the case of *Sheen* v. *Kubiac*, 131 Ohio St., 52, 1 N. E. (2d), 943, the Supreme Court held in paragraph three of the syllabus:

"To warrant the granting of a motion for a new trial based on the ground of newly discovered evidence, it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence."

In the later case of *Domanski* v. *Woda*, 132 Ohio St., 208, 6 N. E. (2d), 601, the Supreme Court broadened these rules, particularly with respect to knowledge acquired during trial, and held:

"1. New trials on the ground of newly discovered evidence are not favored by the courts.

"2. The granting or refusing of a new trial on the ground of newly discovered evidence rests largely within the sound discretion of the trial court, and when such discretion has not been abused reviewing courts should not interfere.

"3. Newly discovered evidence is other than that which might have been known before the termination of a trial had due diligence been used.

"4. Where during the trial of a case a party is given reasonable cause to believe that favorable and available evidence of a material nature exists, it is his duty, in the exercise of due diligence, to ask for a continuance, if necessary, to investigate, and to produce such evidence, if found. Having finally submitted the case without doing so, and having searched for and found the evidence after verdict, he may not then successfully claim the right to a new trial on the basis that such evidence is newly discovered."

Tested by these various rules there appear to be a number of grounds on which the trial court may have determined to

exercise its discretion adversely to the plaintiffs. The journal entry of judgment does not reveal the specific reason for which the trial court ruled against plaintiffs in this respect, and in its opinion the trial court discussed various reasons, including plaintiffs' lack of due diligence.

Certainly, regardless of the existence or nonexistence of other grounds, during the trial, if not before, plaintiffs were given reasonable cause to believe that the checks which they now produce existed. They did not ask for a continuance to investigate and produce this evidence. They may not now say that, having submitted their case without doing so, and thereafter having searched for and found the checks, the trial court abused its discretion in refusing to grant a new trial on the basis of such evidence. Plaintiffs not having shown abuse of discretion by the trial court in any particular, this court will not interfere with the trial court's refusal to grant a new trial on the basis of "newly discovered evidence."

Plaintiffs' third assignment of error is on the theory that the "new" evidence produced proved that the signature to the codicil was a forgery, and that the judgment of the court, in dismissing the petition for a new trial was, therefore, against the weight of the evidence. The issue before the trial court was not whether the codicil was a forgery (an issue which would be tried again only in the event that a new trial was granted), but as to whether the "new" evidence satisfies the various requirements set forth in the syllabi to the *Sheen* and *Domanski cases,* hereinbefore quoted. It is conceivable that evidence could bear very strongly in favor of a signature being a forgery, but unless it satisfied all the requirements thus set forth it would not be grounds for a new trial. As appears in our discussion of the second assignment of error, the determination of this matter was largely within the sound discretion of the trial court and no abuse of discretion has been shown. Plaintiffs' third assignment of error is, therefore, without merit.

Plaintiffs' fourth assignment of error is based on the errors claimed in the first three assignments of error. As we have found no error with respect to the first three assignments of error, the fourth assignment of error is likewise without merit.

There being no error, the judgment of the Common Pleas Court dismissing plaintiffs' petition for the vacation of its earlier judgment and for a new trial is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and YOUNGER, J., concur.