STATE OF IOWA, appellee, v. JOHN COMPIANO, appellant.

No. 52508

(Reported in 154 N.W.2d 845)

512

DECEMBER 12, 1967.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Ronald Kunz, Assistant Polk County Attorney, for appellee.

LARSON, J.—In a jury trial on November 16, 1966, in the Municipal Court of the City of Des Moines, Iowa, the defendant, John Compiano, was found guilty of the crime of assault and battery committed on the 12th day of May, 1966. Defendant's motion for a new trial, which alleged that he failed to receive a

fair and impartial trial due to mistaken testimony by a police officer, was overruled and he appeals. We affirm.

Assigned as error was the trial court's denial of defendant's motion for a new trial on the ground that new material evidence had been discovered. He contends that, although in determining whether the defendant was entitled to a new trial a large amount of discretion is vested in the trial court, under the particular circumstances of this case the trial court abused its discretion, that it had a duty to grant him a new trial because a witness on a material matter admitted under oath that he was mistaken in his testimony, and that defendant had shown due diligence to discover new evidence which would probably produce a different result in another trial.

It appears from the record that defendant, owner and operator of a restaurant and motor hotel in Des Moines, learned that one of his employees, James Palmas, was intending to quit that night without giving a customary notice. Palmas was summoned to defendant's office, admitted his intention to quit, and after a heated exchange of words was immediately ordered off defendant's premises. Not being satisfied with compliance efforts on the part of Palmas, defendant, followed by his manager, Gary Fatino, started to chase Palmas down a hallway and out the back door of the kitchen. Defendant caught up with Palmas in the adjoining parking lot, and there the alleged battery took place.

Palmas testified that after Compiano caught up with him, defendant pushed him down, kicked him and hit him in the mouth with his fist. He further stated that Compiano called him a no-good s.o.b., a dirty Greek, and threatened to kill him. He said he did not strike back.

Carolyn Terry, an employee of the defendant, said that she saw Palmas running out the back door with Compiano chasing him, and that by the time she got to the back door Palmas was on the ground and Compiano was kicking him and calling him dirty words.

Officer Lonnie Losee testified that he was called to the scene to talk to a party about an assault and battery and, when he arrived, he was met by Palmas, who then related what had happened and asked him to get his (Palmas') clothes from the res-

taurant. He further testified that he went into the restaurant to get the clothes and was met by a man who identified himself as John Compiano. When he asked Compiano what had happened, Compiano told him there had been a disagreement and that he had struck Palmas a few times, but made no mention of kicking him.

Hubert Schuman, manager of the defendant's kitchen, testified that he saw Compiano kick Palmas but did not know whether he had hit him. He also stated that about twenty or thirty minutes after the incident in question Palmas and the officer came for Palmas' clothes. He stated that he got the clothes for them and told the officer to take Palmas' work clothes to Compiano, but he did not observe the officer with Compiano.

Evelyn Gillespie, a waitress for the defendant, said she saw Palmas run out the back door with Compiano in pursuit and then Palmas fell on the curb. However, she stated that Compiano was not close enough to Palmas to push or knock him down and that she did not see him strike or kick Palmas. She further stated that, after the alleged incident, Compiano went back into the coffee shop and remained there the rest of the evening, and that she did not observe a policeman talk to him during this time.

The defendant testified that on the night of the alleged incident, after being advised by Palmas that he was quitting, an exchange of words followed and he ordered Palmas off the premises. He stated that he chased after Palmas, but did not hit or kick him. He further stated that at no time did he talk to any policeman and had never seen Officer Losee until he testified at the trial.

Gary Fatino, manager of defendant's restaurant, testified that, although Compiano became irritated and chased Palmas into the parking lot, he did not strike or kick him and that Palmas fell over an island in the parking lot. He also stated that he (Fatino) had often been mistaken for Compiano.

 This case was tried before a six-man jury approximately six months after the information had been filed by Palmas. Although misdemeanor charges do not require a four-day notice to opposing counsel of witnesses to be called, counsel for the State did furnish the names of all witnesses except that of Officer Losee. Apparently the county attorney had not contempla-

ted calling the officer, for he was not questioned or notified of that fact until the day before the trial. Appellant complains of this action and contends he was surprised and not prepared to rebut the testimony of the officer. However, after hearing the officer testify and identify defendant early in the proceedings before cross-examination, defendant advised his counsel that the officer was mistaken. Cross-examination did not indicate any mistake, and at the noon recess counsel for defendant tried to locate and question Officer Losee as to his testimony. Losee had left the building and his whereabouts were unknown to the police department.

Appellant maintains he wanted to confront Officer Losee with Mr. Fatino, defendant's manager, to see if he still believed his identification and testimony regarding defendant were correct. Fatino testified in the afternoon that it was he to whom Losee talked on the night of May 12, 1966, and that, because of his position and certain physical features, he had often been mistaken for the defendant.                                    :

In any event, Officer Losee was not located, the court was not advised of defendant's suspicions, and no continuance was asked as permitted under rule 183, Rules of Civil Procedure. The case was submitted to the jury at 4:18 p.m., and at 9:45 p.m., after receiving a "get-together" instruction, it returned a sealed verdict of guilty. The next day Losee was found, confronted by Fatino, and recanted his testimony in an affidavit filed with the motion for a new trial. When defendant's motion was denied on November 30, 1966, he appealed.          ·          ·  ·  ·

■ I.  In passing on motions for a new trial based upon evidence newly discovered, the trial court is vested with wide discretion. Farmers Insurance Exchange v. Moores, 247 Iowa 1181, 1186, 78 N.W.2d 518; Torrence v. Sharp, 246 Iowa 460, 464, 68 N.W.2d 85; Tedrow v. Fort Des Moines Com. Servs., 254 Iowa 193, 200, 117 N.W.2d 62; Rule 344(f)(3), R. C. P.

■ It is "important for the orderly administration of criminal justice that findings on conflicting evidence by trial courts on motions for new trial based on newly discovered evidence remain undisturbed except for most extraordinary circumstances

516

* * *." United States v. Johnson, 327 U.S. 106, 111, 66 S. Ct. 464, 466, 90 L. Ed. 562, 565.

The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have often said we will not interfere with its ruling unless it is reasonably clear that such discretion was abused. Farmers Insurance Exchange v. Moores, supra; Loughman v. Couchman, 243 Iowa 718, 720, 53 N.W.2d 286; State v. Olson, 260 Iowa 311, 317, 149 N.W.2d 132, 135, and citations; Larson v. Meyer & Meyer, 227 Iowa 512, 519, 288 N.W. 663.

In State v. Addison, 250 Iowa 712, 719, 95 N.W.2d 744, 748, it was specifically pointed out that the trial court was in a better position than the appellate court to determine whether diligence, one of the necessary elements to be shown, was used to discover and produce the alleged new evidence relied upon by movant, and whether it would have probably led to a different result upon a retrial.

II. Motions for new trials based upon newly discovered evidence are not favored in the law and should be closely scrutinized and granted sparingly. Westergard v. Des Moines Ry. Co., 243 Iowa 495, 499, 52 N.W.2d 39; Tedrow v. Fort Des Moines Com. Servs., and Loughman v. Couchman, both supra; Weiss v. United States, 5 Cir., 122 F.2d 675, 691.

A motion for a new trial on the ground of newly discovered evidence goes to the statutory ground of whether there was a fair and impartial trial. State v. Sims, 241 Iowa 641, 648, 40 N.W.2d 463; State v. Burgess, 237 Iowa 162, 164, 21 N.W.2d 309.

Ordinarily, on motions for new trials based on a claim of newly discovered evidence, one convicted of a crime should not be granted a new trial unless the trial court is satisfied that the testimony of a material witness was false or mistaken, and unless a jury might reach a different conclusion without such testimony. Larrison v. United States, 24 F.2d 82; United States v. Johnson, supra.

A witness' recantation of his testimony is looked upon with utmost suspicion. Harrison v. United States (2 Cir.),

7 F.2d 259, 262; Newman v. United States (5 Cir.), 238 F.2d 861. Such newly discovered evidence, of course, is not new evidence in the real sense. On the contrary, it is but an assertion by affidavit that the former testimony given by the witness was false. The trial court is not required to believe the recantation, but must make its decision on the basis of the whole trial and the matters presented on the hearing on the motion. Premised thereon, if it believes the statements in the affidavit of recantation are false, and is not reasonably well satisfied that the testimony given by the witness on the trial was false, it should deny the motion, and it is not at liberty to shift upon the shoulders of another jury the responsibility to seek out the truth of that matter. Gordon v. United States (6 Cir.), 178 F.2d 896, 900, certiorari denied 339 U.S. 935, 70 S. Ct. 664, 94 L. Ed. 1353.

We ourselves said in State v. Thompson, 241 Iowa 16, 29, 39 N.W.2d 637, that although the authorities are not in accord on this issue, the majority rule appears to be that ordinarily recantation by a witness is not an absolute ground for a new trial, that there is considerable discretion lodged in the trial court, citing 39 Am. Jur., New Trial, section 169, page 175, and 158 A.L.R. 1062. We noted that each case must, of necessity, depend upon its own peculiar facts and, although usually the question which is raised by recantation goes to the credibility of the witness, we recognized the discretion lodged in the trial court to resolve this truth issue itself.

True, where a material witness admits under oath that his testimony was mistaken or false, a new trial has sometimes been granted, especially where the testimony was such that, if believed, defendant could not have been guilty of the crime charged. As bearing on its materiality, see State v. Burgess, supra. In other cases where the crime was established independent of the retracted testimony, the attempted retraction has been held insufficient to justify the conclusion that the original evidence given by the witness on the trial was false. People v. Tallmadge, 114 Cal. 427, 46 P. 282; People v. Shilitano, 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916F 1044. Also see Note 51 L. R. A., N.S., 293, and citations.

In any event, a new trial is usually denied, where the party could have shown the perjured or mistaken character of the adversary's testimony at the trial, on the ground that there must be an end of litigation. Mere recantation of a witness on any material matter should not necessitate a new trial if, eliminating such evidence, there is still substantial evidence to support the jury's verdict. Larrison v. United States, supra.

■ Even where adequate grounds appear for granting a new trial, the general rule requires movant to show (1) that the evidence was discovered following trial and before judgment, (2) that it was not such as could have been discovered before the conclusion of the trial in the exercise of due diligence, (3) that it must be material to the issue, not merely cumulative or impeaching, and (4) that such evidence will probably change the result if a new trial is granted. Farmers Insurance Exchange v. Moores, supra, 247 Iowa 1181, 1187, 78 N.W.2d 518; Ledet v. United States, 297 F.2d 737, 739; Rothstein v. Rothstein, 109 Ohio App. 234, 164 N.E.2d 768, 772. Appellee contends appellant failed to carry his burden as to items (1), (2) and (4), that the trial court's discretion was properly exercised, and that defendant had received a fair and impartial trial.

III. Courts are aware that, unless a movant is required to show timely due diligence in the discovery of new evidence, his newly discovered evidence might be withheld as trial strategy to obtain a second trial if needed. As a result, these rules have been broadened in some jurisdictions, particularly with respect to knowledge acquired during the actual trial.

In Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601, the Ohio Supreme Court held inter alia that "Newly discovered evidence is other than that which might have been known before the termination of a trial had due diligence been used," and said, "Where during the trial of a case a party is given reasonable cause to believe that favorable and available evidence of a material nature exists, it is his duty, in the exercise of due diligence, to ask for a continuance, if necessary, to investigate, and to produce such evidence, if found. Having finally submitted the case without doing so, and having searched for and found the evidence after verdict, he may not

then successfully claim the right to a new trial on the basis that such evidence is newly discovered."

Although we have had no previous occasion to consider this rule extension, we believe it sound and hold it applicable to the facts revealed in the case at bar. On the matter of due diligence we did have this to say in Westergard v. Des Moines Ry. Co., supra, 243 Iowa 495, 503, 52 N.W.2d 39: "The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; *he must use that of which he knows,* and *he must follow all clues* which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed." (Emphasis added.)

At the outset we note defendant became aware of the possibility of mistake by the officer during his testimony at the trial before the noon recess and, although he made an effort to check on it during the recess, he did not ask for a continuance to do so when his efforts to locate the officer that afternoon failed. Instead, he elected to submit the matter without further challenge of the officer's testimony as to indentity and his conversation with the defendant. Under these circumstances we cannot hold due diligence was shown as a matter of law, and must hold under this record the trial court could find due diligence had not been shown.

IV. Appellant contends the recantation evidence given by Officer Losee was so vital and material that without it the jury verdict could not be permitted to stand. He maintains it was more than merely cumulative, that it tended to impeach the testimony of his witnesses and was the only testimony of an admission that defendant struck Palmas at anytime. He argues that the length of time the jury deliberated indicates the influence the officer's testimony had, and contends that without it a different result would have been reached. The State contends the new evidence was merely cumulative.

We considered a similar disagreement in Westergard v. Des Moines Ry. Co., supra, 243 Iowa 495, 500, 52 N.W.2d 39,

and said that sometimes the newly discovered evidence is not entirely or strictly cumulative, but whether it is or not is not a question of great importance. "The test is not whether the offered newly discovered evidence is cumulative, but whether * * * it is sufficient to justify the trial court, in the exercise of a legal discretion, in concluding there is a reasonable probability of a different result upon another trial."

We are inclined to agree here that the testimony given by the officer was not merely cumulative, although it must be said that as to the issue of whether defendant struck and kicked Palmas it is cumulative. In Utseth v. Pratt-Mallory Co., 208 Iowa 1324, 1325, 1326, 227 N.W. 115, 116, we said: "No definite rule can be laid down, differentiating evidence that is cumulative from evidence which is not. We have held that that question also rests largely in the discretion of the trial court." In Westergard, supra, we recognized that the modern trend places the emphasis, not on the cumulative or noncumulative nature of the evidence, but on whether a different result is probable. Also see 39 Am. Jur., New Trial, section 171, page 177.

Determination of this issue, of course, must be made from a consideration of the entire record and originally by the trial court. Appellant cites and relies upon State v. Burgess, supra, 237 Iowa 162, 21 N.W.2d 309. That is an alibi case, not a recantation case, and there if the newly discovered evidence was taken as true, the defendant could not have committed the crime charged. He would have been on a train that had departed from Des Moines an hour before the crime occurred. In the interest of justice a new trial was granted. This is not so in the case at bar. If the recanting evidence is accepted as true, the defendant could still be guilty of the offense charged, for there was sufficient evidence without the alleged admission to sustain the verdict.

The trial court that saw and heard the witnesses did not consider the veracity of the alleged newly discovered evidence was sufficiently established. Apparently it did not believe the statements in the Losee affidavit and based its ruling largely thereon. Although defendant's counsel attacked the court's stated reasons for this disbelief, and it seems some of those reasons would not be proper, we are bound by the rule that if

the court could properly find as it did, its ruling must stand. Houlahan v. Brockmeier, 258 Iowa 1197, 141 N.W.2d 545, 549. The evidence submitted by the officer's affidavit did not compel the trial court to grant the new trial. The issue before the court was simply whether, on the affidavit submitted, the trial court was compelled to grant the new trial, not whether the affidavit would have supported an order granting a new trial. Wilson v. Kopp, 114 Cal. App.2d 198, 250 P.2d 166, 170.

Nothing appears in the affidavit which compelled the trial court to find the trial testimony of the officer was not true, or to accept the recantation as true. To approve such a rule would, of course, open the door to endless litigation where a material witness chooses, for reasons of his own, to change his testimony on any relevant matter. Everyone is entitled to one fair trial, but only one.

V. The rule is firmly established that to be entitled to a new trial as a matter of law, the rulings of the trial court must appear to have been so prejudicial as to deprive defendant of a fair trial. However, a fair trial does not necessarily mean a perfect trial. State v. Haffa, 246 Iowa 1275, 1286, 71 N.W.2d 35, certiorari denied 350 U. S. 914, 76 S. Ct. 198, 100 L. Ed. 801; State v. Mercer, 261 Iowa 371, 154 N.W.2d 140, and citations. We may disagree with the trial court on close questions of this nature, but must uphold its ruling if not clearly erroneous.

It seems possible that the officer could make a mistake in visual identity because of the dark hallway in which the alleged conversation with defendant took place, but his affidavit also attempted to change the substance of the conversation. It changed the positive statement made at the trial that the person he talked to "identified himself as Mr. Compiano" to "that the man identified himself *either* as Mr. Compiano or as the manager and I assumed that they were one and the same," and also the positive assertion that the defendant said, "I struck him a few times" to "I was not sure that the man stated that either he had struck Mr. Palmas or that Mr. Palmas had been struck a few times, or that he struck any blows on Mr. Palmas."

There are sufficient discrepancies, unusual departures and changes of testimony in the officer's affidavit from which the

trial court could conclude that the testimony at the time of trial, and not the affidavit, was a true statement of the events that transpired.

We conclude the trial court did not abuse its legal discretion in denying defendant's motion for a new trial, and are satisfied defendant received a fair and impartial trial. The judgment must be affirmed.—Affirmed.

All JUSTICES concur except BECKER, J., who dissents.