STATE of Iowa, Appellee,

v.

Jeffrey Alan TAYLOR, Appellant.

No. 62861.

Supreme Court of Iowa.

Jan. 23, 1980.

Thomas J. Levis of Scalise, Scism, Gentry, Brick & Brick, Des Moines, and Frank D. Tucker, Jr., Bettendorf, for appellant.

Thomas J. Miller, Atty. Gen., and Selwyn Dallyn, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS, and McCORMICK, JJ.

LeGRAND, Justice.

Defendant was charged with having murdered Melba June Miller. He waived trial by jury under rule 16, R.Crim.P. *Cf. State v. Henderson,* 287 N.W.2d 583 (Iowa 1980) (defendant in criminal case has absolute right to waive trial by jury). After trial to the court, he was convicted of murder in the first degree. § 690.2, The Code 1977. He appeals from the judgment entered on this finding. We affirm.

The appeal presents three questions: 1) sufficiency of the evidence; 2) defendant's right to a new trial for newly discovered evidence; and 3) State's alleged suppression of exculpatory evidence. We discuss each separately.

## I. *Sufficiency of the Evidence.*

 Defendant admits he has a difficult task in challenging his conviction on this ground. He acknowledges, too, the general principles which apply in a defendant's appeal from a criminal conviction. We view the evidence in the light most favorable to the State and accept as established all reasonable inferences tending to support the conviction. It is necessary to consider only the supporting evidence, whether contradicted or not. The finder of fact passes upon the credibility of witnesses. On review, we determine only if there is substantial evidence to support the finding. *State v. Overstreet,* 243 N.W.2d 880, 884 (Iowa 1976). In another opinion filed today, we held these rules are applicable to criminal cases tried to the court under rule 16, R.Crim.P. *See State v. Hall,* 287 N.W. 2d 564, 565 (Iowa 1980).

This murder charge arises out of events occurring on October 18, 1977, at the Brady Street Tap in Davenport. The victim, Melba Miller, was employed there as a bartender. Her body was found in the tavern on the morning of October 19, 1977. She had died, according to a pathologist, from "a shearing type laceration approximately eight centimeters in length, administered to the right rear portion of her skull." In his opinion the wound could have been caused by a pool cue found near the body. The

tavern had been robbed and Melba Miller's purse, later connected up with defendant, was missing. Some of the money from the robbery was also traced to him.

Defendant had spent most of the evening of October 18, 1977, in the tavern drinking tequila and beer. From about 10:00 p. m. on he and the victim were the only ones there. The trial court found defendant planned to rob the place; that he waited until Melba Miller went to the rest room; that he then rifled the cash register; that she returned while he was so engaged and that he struck her with a pool cue in order to effect his escape and avoid later identification; and that he was guilty beyond a reasonable doubt of murder committed during the course of the robbery, which is by statute murder in the first degree. § 690.2, The Code 1977.

Defendant argues the evidence does not show an intent to rob before the assault on Melba Miller had been completed. Thus, he says, the trial court erred in finding he is guilty of felony murder. Defendant is right that felony murder must be based on a causally related felony and acts causing death. *State v. Conner,* 241 N.W.2d 447, 464 (1976); *State v. Hinkle,* 229 N.W.2d 744, 751 (Iowa 1975). But he is wrong in arguing that relationship is missing here. This involves the testimony of Gary Bebensee, a matter we discuss later under the division of newly discovered evidence. For present purposes we accept it as found by the trial court.

Bebensee testified extensively concerning a conversation with defendant within a very short time after the murder. He was then going with defendant's sister, Cindy, whom he later married. He was with her on the night of the murder when defendant called, asking if she could pick him up at Locust and Brady Streets. They did so, and defendant then related some of the events of the night. Bebensee's version of the conversation differs from that of Cindy. According to Bebensee, defendant said he was in the tavern drinking and decided to rob the tavern. He waited until Melba Miller went to the rest room and then went

behind the bar. He was there when Melba Miller returned. He tried to quiet her and get away. In doing so, the attack from which she died occurred. Cindy denies defendant made any statement about robbing the place, but she agrees that defendant said he thought he had killed someone.

We find that all the elements of first-degree murder were present. Malice, under such circumstances, may be implied from the commission of a felony which results in death. *State v. Veverka,* 271 N.W.2d 744, 747 (Iowa 1978); *State v. Nowlin,* 244 N.W.2d 596, 605 (Iowa 1976); *State v. Conner,* 241 N.W.2d 447, 464 (Iowa 1976); *State v. Hall,* 214 N.W.2d 205, 210–11 (Iowa 1974). The statute (§ 690.2, The Code 1977) makes a murder committed in the course of certain felonies including robbery, first-degree murder. *State v. Galloway,* 275 N.W.2d 736, 738 (Iowa 1979).

We affirm the finding of the trial court that defendant was guilty of murder committed in the course of robbing the Brady Street Tap.

II. *Newly Discovered Evidence.*

We discuss next the testimony of Randy Bebensee, which was important to the State's case. It was he who supplied evidence relating to defendant's intent to rob before he assaulted the murder victim and the trial court stated it relied heavily on this witness in deciding the facts.

Defendant filed a motion for new trial based principally on an affidavit in which Bebensee recanted his trial testimony and denied defendant had made any statement concerning his intent to rob before the assault on Melba Miller was completed.

After an evidentiary hearing on the motion, it was denied.

As pointed out in *State v. Compiano,* 261 Iowa 509, 517, 154 N.W.2d 845, 849 (1967) such a motion is not really based on newly discovered evidence, although it is frequently referred to in that way. Instead it points to certain testimony as false—either purposely or inadvertently—and asserts defendant was thereby denied a fair trial. Such motions are to be carefully scrutinized and, even if true, do not entitle defendant to a new trial in all cases. The trial court has wide discretion to view the matter in its entirety, to determine if defendant has had a fair trial and if a new trial would likely produce a different result. We will not interfere unless there is a clear abuse of discretion. *Id.* at 516, 154 N.W.2d at 849.

In the present case Bebensee did not claim he had testified falsely, only that he was "nervous" and "confused" and did not understand some of the questions. The trial court reviewed Bebensee's testimony both at trial and at the hearing on the motion. It concluded he testified truthfully at trial, finding he detailed a sequence of events as related by defendant which bore the marks of credibility. The trial court took into account that Bebensee testified under trying circumstances as a member by marriage of defendant's family. As the trial court pointed out, Bebensee was subjected to brisk cross-examination, which failed to shake his story in any important detail and which, in fact, suggested it was defendant's counsel who was trying to confuse him.

Recantation in any event is looked upon with suspicion. The trial court is not required to believe the recantation. Unless satisfied the trial testimony was false and also that a jury might reach a different result without it, a new trial should not be granted. *Compiano,* 261 Iowa at 516–17, 154 N.W.2d at 849.

In overruling defendant's motion, the trial court made a specific finding that Bebensee had testified truthfully at trial. Such a finding was well within the trial court's discretion under this record. We find no merit in defendant's claim he was entitled to a new trial on this ground.

III. *Suppression of Exculpatory Evidence.*

Several days before trial the assistant county attorney interviewed Bebensee. The interview was taped. In one instance Bebensee said defendant had made no

statement concerning his intent to rob. In several others he said such a statement had been made. Whether the tape, taken in its entirety, contained exculpatory matter is questionable; but it certainly might have provided helpful information for cross examination at trial.

The assistant county attorney offered the tape to defendant's counsel before the trial began and again after Bebensee's direct examination had been completed. Neither offer was accepted. Now defendant claims the State suppressed exculpatory evidence.

■ The State has a duty to divulge exculpatory information on request. Failure to do so may entitle defendant to a new trial. *State v. King,* 256 N.W.2d 1, 15 (Iowa 1977); *State v. Van Rees,* 246 N.W.2d 339, 345 (Iowa 1976); *State v. Hummell,* 228 N.W.2d 77, 80–81 (Iowa 1975); *State v. Peterson,* 219 N.W.2d 665, 675 (Iowa 1974); *State v. Houston,* 209 N.W.2d 42, 45–46 (Iowa 1973); *State v. Aossey,* 201 N.W.2d 731, 734 (Iowa 1972).

■ The State did not violate its duty in this case. It offered the tape to defendant twice. Defendant now complains because he was not told what was in it. The State has no obligation to evaluate the statement for defendant. Indeed the State perhaps did more than was required of it in offering the tape to defendant without a request. In volunteering such information, the State was following our suggestion in *Aossey,* 201 N.W.2d at 734, and we repeat that advice here. There was no suppression of exculpatory evidence. Defendant's claim to the contrary is groundless.

We find no reversible error in any of the issues raised, and the judgment is affirmed.

AFFIRMED.