# IN THE COURT OF APPEALS OF IOWA

No. 21-0335
Filed March 30, 2022

**SHERRY WILLIAMS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, Judge.

An applicant appeals the denial of her postconviction-relief application that requested a new trial based on the discovery of new evidence. **AFFIRMED.**

John Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

Sherry Williams appeals the denial of her postconviction-relief (PCR) application in which she requested a new trial based on the discovery of new evidence in the form of her son recanting testimony he gave in her criminal trial. We affirm the district court's dismissal of William's PCR application.

## I.    Background Facts & Proceedings

Williams was convicted of first-degree robbery following a jury trial in December 1998. She was sentenced on January 8, 1999. During that robbery, DeVoss Nelson pointed a gun at Peggy Escamilla, grabbed her purse, and fled the scene. *State v. Williams*, No. 99-105, 1999 WL 823856, at *1 (Iowa Ct. App. Oct. 15, 1999). The State argued that Williams and Nelson had planned the robbery together, Nelson returned to Williams's house on Marquette Street following the robbery, and they split the money and goods found in the purse. *Id.* Additionally, the State claimed Williams pawned the jewelry found in the purse. *Id.* Later, police officers stopped a stolen vehicle occupied by Williams and Nelson. *Id.* During the stop, the officers located the gun used in the robbery inside the stolen vehicle. *Id.*

At her criminal trial, Williams claimed she was not involved in the crime and offered two alibi witnesses, her mother and sister, to testify that she was at a different location during the robbery. *Id.* Both witnesses conceded that although Williams was generally living with her sister, they could not account for her location at the time of the robbery. *Id.* Nelson, an occupant of the Marquette Street house, and Williams's son, Valentino, testified that Williams was involved in the robbery.

Valentino, who in exchange for a plea deal in a separate criminal proceeding was obligated to testify truthfully, explained his mother's involvement as follows:

> . . . A: Okay, I'm in juvenile detention center for robbing somebody at Save-A-Lot, a purse snatching, okay? DeVoss Nelson had the gun, okay? He—basically, he had robbed a person then at Bob-Inn, took it himself, robbed somebody while my mom was at the house. He came back to my mom's house and knocked on the door. My mom was scared to let him in, you know, and—basically, my mom let him in the house, and, you know, he told my mom where he had got the stuff from. My mom took it on herself to go down there and pawn it where she pawned it at. My mom did not know nothing about he was robbing nobody.
> Q: Your mom pawned the jewelry? A: Yes.
> Q: Didn't you tell Detective [William] Thomas your mom was involved in the actual robbery? A: No, I did not.
> Q: You never told him that? A: No, I did not. She was involved in the robbery by pawning the jewelry.

The jury found Williams guilty of first-degree robbery, and she was sentenced to twenty-five years in prison. Her conviction was upheld on direct appeal. *Id.* at *2. This court found:

> The jury could rationally have disbelieved Williams' mother and credited the testimony of her accomplice, who placed Williams at the scene of the crime and established her complicity in the crime. Portions of his testimony were corroborated by Williams' son as well as an occupant of the house on Marquette Street.

*Id.* at *1.

Williams initiated the instant PCR proceedings, her fifth, by filing a pro se application on January 1, 2019. Her application alleged that police coerced Valentino to testify against her and asserted that Valentino wished to recant his testimony. Her application was amended on January 23, alleging multiple witnesses gave testimony under coercion. A trial on the application was held in February 2021.

Valentino, who began serving a life sentence for first-degree murder in late 2019, was the only witness who testified at the instant PCR proceeding. Valentino offered several explanations of the events surrounding the trial. He claimed the testimony he gave at his mother's criminal trial was categorically false. He suggested that he never told Detective Thomas that his mother was involved. He alleged that he only testified his mother was involved in the robbery because he was upset that she had informed the police about other robberies he committed. He also stated that Detective Thomas, along with a woman just before trial, told him what to say. Finally, he claimed he only said what DeVoss—who was also upset with Valentino's mother for informing on him—told him occurred. Valentino explained that he waited twenty years to recant because "nobody ever asked [him]" and because he finally came to the realization that his "mom should have some type of redemption." Further, he determined, "I know truly in life I only got one mother."

The district court denied Williams's application, finding Valentino's recantation was not credible and, in any event, the recantation would not have warranted a new trial given the limited role Valentino played in the criminal trial. Williams appeals.

## II.     Standard of Review

We generally review the denial of a PCR application for correction of errors at law. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018). "Thus, we will affirm if the trial court's findings of fact are supported by substantial evidence and the law was correctly applied." *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003).

## III.    Discussion

Williams claims the district court improperly denied her PCR application and should have granted her a new trial based on newly discovered evidence.

> A motion for new trial on the basis of newly discovered evidence should be granted only where the evidence "(1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial."

*State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) (citation omitted).

"The district court is vested with '[u]nusually broad discretion' when 'ruling on a motion for a new trial on the basis of newly discovered evidence.'" *Id.* (alteration in original) (quoting *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992)). Courts should "closely scrutinize [such claims] and grant them sparingly." *State v. Carter*, 480 N.W.2d 850, 852 (Iowa 1992). Our courts have long held that recantations should be "looked upon with utmost suspicion." *State v. Compiano*, 154 N.W.2d 845, 849 (Iowa 1967). The district court is not required to believe the recantation, and "must make its decision on the basis of the whole trial." *Id.* at 517. "If [the court] believes the statements . . . of recantation are false, and it is not reasonably well satisfied that the testimony given by the witness on the trial was false, it should deny the motion." *Id.* On the other hand, if the court believes the recantation, it should "not necessitate a new trial if, eliminating such evidence, there is still substantial evidence to support the jury's verdict." *Id.* at 850.

The district court determined Valentino's testimony at the PCR trial "to be highly suspect and not credible." Such a conclusion is amply supported by the record. First, Valentino recanted after waiting twenty years. He is serving a life-

sentence, and identified that "I only got one mother. I don't have any true friends." There is little downside in recanting given his situation. Valentino failed to stick to one version of events: he claimed he never told Detective Thomas anything about his mother; he suggested that he made up his mother's involvement entirely but also testified that he only said what DeVoss instructed him to say. He also claims he only testified according to Detective Thomas's and another unidentified woman's instructions. Such inconsistencies make his overall claim that the testimony he gave at trial was false questionable.

Additionally, even if the district court were to accept Valentino's testimony, the recantation would be insufficient to warrant a new trial because substantial evidence supports the jury verdict. Valentino offered little testimony at his mother's criminal trial. Valentino, who was in juvenile detention at the time of the robbery, only testified his mother pawned some of the stolen goods. He specifically testified that his mother was not otherwise involved in the robbery. Accepting Valentino's recantation does not alter the evidence offered by the State showing Williams was involved in the robbery by planning it and splitting the proceeds with Nelson at the Marquette Street house. Even absent Valentino's testimony, the jury could consider and believe testimony from Nelson and another occupant of the Marquette Street house, both of which implicated Williams in the robbery. The jury could also consider the weak alibis provided by Williams's mother and sister, as well as the fact that police found the gun used in the robbery in a stolen car Nelson and Williams occupied. We affirm the dismissal of Williams's PCR application.

**AFFIRMED.**