# IN THE COURT OF APPEALS OF IOWA

No. 24-0153
Filed August 6, 2025

**TIMOTHY TERRELL HINES,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

An applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**

Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee State.

Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Timothy Hines was convicted of second-degree murder for the stabbing death of Nathan Williams outside a busy convenience store in June 2007. At his criminal trial, Hines testified that he stabbed Williams in self-defense after he saw Williams reach for a silver gun in his waistband. But none of the witnesses to the stabbing saw Williams with a gun.

Thirteen years after Hines's conviction—and while his third application for postconviction relief was pending—an inmate incarcerated with Hines came forward with an affidavit about the silver gun. Following an evidentiary hearing, the district court denied Hines's claims for newly discovered evidence and actual innocence and dismissed his application. Hines appeals, claiming the court erred by misapplying the test for newly discovered evidence and by finding the testimony of Hines's fellow inmate was insufficient to show his actual innocence.

## I.     Background Facts and Proceedings

We summarized the facts of Hines's crime in our opinion on direct appeal:

> At about 10:00 in the evening on June 22, 2007, Defendant Hines and his fiancée Mya Williams stopped at a convenience store in Cedar Rapids, Iowa. Mya went into the store, and Hines remained in the car. Hines carried a small utility knife on his belt.
> While in the store, Mya encountered Nathan Williams (no relation to Mya), who was attempting to sell a telephone headset accessory to customers inside the store. Jerry Robinson, a friend of Nathan's, was also in the store. Mya and Nathan argued and exchanged words. Mya then left the store followed by Nathan. After exiting the store, Mya yelled to Hines that Nathan had "put his hands on [her]." There are differing versions of the events that followed. Hines testified as follows: Nathan had his hands on Mya when they exited the store, and that he heard her say "Let me go." Hines then got out of his car and asked Nathan "What's going on? Why are you grabbing her?" Nathan told him to mind his "F'ing business" and started walking towards him. Hines saw Robinson coming towards him from the direction of the store. Hines told Mya, "Let's get in the

car and let's leave," but Nathan swung and hit him in the side of his face. Hines then dropped down to his knees and tried to protect himself. Nathan punched him about two times, and he jumped up to try to get to his car, but only made it to one knee and one foot, and then Nathan grabbed him. He heard Robinson tell Nathan, "Man, shoot, pop his ass." Hines then saw Nathan raise his shirt and he could see a silver gun stuck in his waistband. When Nathan reached down for the gun, Hines backed up, grabbed his knife off his side, and swung two times to make Nathan let go of him, stabbing Nathan twice. Hines and Mya then left the scene.

Hines's testimony conflicted with the testimony of several eye-witnesses who observed the fight. Most witnesses initially thought Hines had punched Nathan in the side of his chest, and they testified that the fight happened very quickly. None of the witnesses saw any weapons. One witness testified that Nathan did not do anything of a physical nature toward Hines, and that Nathan did not reach for anything. Another witness testified she saw Nathan hand a brown bag to Jerry Robinson. She testified Robinson then took off around the corner and left the scene. The witness testified the bag was big enough to contain a gun or a knife, but she did not see any weapons. No other witnesses observed Robinson at or involved in the fight between Hines and Nathan.

Robinson testified at trial that after Nathan was stabbed, Nathan handed him a bottle of wine in a brown paper bag and told him to take off. He testified that he had been drinking and that Nathan, aware of that fact, did not want him to get into trouble. However, Robinson acknowledged that he had not mentioned Nathan giving him wine in a brown paper bag after being stabbed in his prior statements.

A security camera video recorded video inside the store the night of the stabbing. The video shows that it was Robinson who made a purchase inside the store, and he carried his purchase out of the store in a white plastic bag. The video does not show Nathan buying anything or having anything in his hands while in the store or when he left.

After he was stabbed, Nathan re-entered the store. He told the clerk he had been stabbed and asked that the clerk call the police. He went back outside and then came back into the convenience store and collapsed. Nathan was taken to the hospital, where he died of blood loss resulting from a stab wound that penetrated the root of his aorta. No weapon was found upon Nathan's person.

*State v. Hines*, No. 09-0241, 2010 WL 446954, at *1–2 (Iowa Ct. App. Feb. 10, 2010).

Hines was apprehended months after Williams's death and charged with first-degree murder. At his criminal trial, Hines raised a justification defense based on his claim that Williams had a gun during their altercation. He tried and failed to introduce testimony from Williams's fiancée, Sharon Bradshaw, "that she and Nathan, just hours before the stabbing incident, had been to a gun shop and test fired a weapon and intended to buy a weapon." *Id.* at *2. Bradshaw also testified that after leaving the gun shop, she dropped Williams off at "14th and Bever Avenue" around 9:00 p.m. that night. The court excluded Bradshaw's testimony after Hines made an offer of proof, ruling that it "was not relevant because no gun was purchased at the shop." *Id.* The jury rejected Williams's justification defense, and we affirmed his conviction on direct appeal. *Id.* at *4.

Over the next decade, Hines applied for postconviction relief twice. Both applications were denied and affirmed by this court on appeal. *See Hines v. State*, No. 13-0418, 2014 WL 1494904, at *1 (Iowa Ct. App. Apr. 16, 2014) (rejecting Hines's claims of ineffective assistance by trial and appellate counsel); *Hines v. State*, No. 17-2080, 2019 WL 1056030, at *1–2 (Iowa Ct. App. Mar. 6, 2019) (finding that Hines's application was untimely and that "Iowa's new 'stand-your-ground' statutory amendments" did not apply retroactively).

Hines filed his third application for postconviction relief in 2019, repeating the same claim that had been raised and denied in his second application. Two years later, Donovan Ross—an inmate housed at Anamosa Penitentiary with Hines—wrote Hines's previous postconviction-relief attorney a letter:

> This is first of all an awkward situation for me, but I think it's only right that I alert you and Mr. Hines of the information that I have concerning his case. I'm currently incarcerated with Mr. Hines, but

there is a certain code of being locked up with someone, you don't just walk up and start asking about someone's case. It's seen as being disrespectful, and could lead to a bad situation. So I was very hesitant in pursuing this, but like I said, I have to tell this part of the story. Therefore, to avoid any altercation with Mr. Hines, due to me not really knowing him and the sensitivity of the case; I felt this was the best way to inform him of what I know about his case.

So enclosed is an affidavit concerning his case, and may be of extreme value.

The affidavit stated that around 9:20 p.m. on June 22, 2007—just under an hour before the stabbing—Ross was smoking marijuana with a few friends at an apartment building on 14th and Bever when he ran into Williams. Ross had a "silver gun, which was a 380" that he was trying to sell, and Williams was looking for a gun to buy. Ross showed Williams the gun, which was hidden under a garbage can behind the apartments. Williams asked if he "could go and show his girl and see if she could handle it" before he bought it. Ross agreed and gave Williams the gun in a brown paper bag. Williams then walked off towards the convenience store, where he later died.

When Hines learned about Ross's affidavit, he abandoned the claim that he had originally raised and instead raised newly-discovered-evidence and actual-innocence claims. At the hearing on those claims, Ross testified to the same facts outlined in his affidavit. But on cross-examination, Ross failed to recall details about that day including the weather, Williams's clothing, and the make of the gun.

The district court concluded the newly discovered evidence "would not change the result of the case" and found that Hines "failed to reach the high standard of proving actual innocence." Hines appeals.

## II.    Standard of Review

We review applications for postconviction relief based on newly discovered evidence for corrections of errors at law.  *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016).  To the extent that Hines's claim of actual innocence raises constitutional questions, our review is de novo.  *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## III.    Analysis

### A.    Newly Discovered Evidence

To prove his newly-discovered-evidence claim, Hines had to show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018) (citation omitted).  The first three elements are not at issue here; the sole question is whether Ross's testimony "probably would have changed the result of the trial."  *Id.*

Hines argues the district court misapplied this last element by requiring an "absolute certainty" of a different result rather than a "reasonable probability."  *See id.* at 153 (describing the test as whether "there is a reasonable probability of a different result upon another trial" (quoting *State v. Compiano*, 154 N.W.2d 845, 851 (Iowa 1967))).  We disagree.  In rejecting Hines's claim, the district court cited the correct elements from *Moon* before concluding

> that Ross'[s] testimony would not change the result of the case because it fails to significantly corroborate Hines's testimony of seeing a small silver handgun in the front wa[ist] band of Nathan Williams'[s] pants during the confrontation.  First, a silver gun was never found at the scene and none of the other witnesses saw a

weapon in Williams'[s] possession. Second, Jerry Robinson testified that Williams handed him a paper bag with a bottle of wine in it after Williams had been stabbed. He did this even after he initially denied to police that Williams gave him anything at the time. Finally, store clerk Jeremy Bush testified that Williams had a blue tooth in the front of his waist band shortly before the stabbing and Bush told Williams he could not sell it in the store. Thus, even if the jury had heard Ross'[s] testimony and believed it, it did not eliminate the probability that Williams did not have the gun with him when he was at the [convenience store].

We agree and add that not only was Hines the lone witness who saw Williams with a gun, but also none of the witnesses saw Williams reach for anything before Hines stabbed him. Thus, as the State argued in the postconviction-relief proceedings, there is a "glaring contradiction" between Ross's testimony and the evidence at Hines's criminal trial: "if the gun was in Nathan Williams'[s] waistband as [Hines] alleges, how did he take it out and put it in a brown paper bag without anyone seeing it? And all after having just been stabbed, nonetheless."

Beyond that contradiction, Ross was not the most credible witness. He is a convicted felon who has been incarcerated with Hines since 2013. While the two inmates denied having ever met or spoken to each other before the postconviction-relief hearing, every detail given by Ross propped up Hines's defense. Ross remembered the date and time when he encountered Williams, the color of the gun, and the bag used to give the gun to Hines. But he did not remember the make of the gun or many other details about that day. And crucially, Ross did not testify that Williams was armed when he was stabbed—only that Williams might have been in possession of a gun about an hour before the crime. *Cf. State v. Davis*, 442 N.W.2d 134, 135 (Iowa Ct. App. 1989) (granting a new trial where a newly discovered witness who was not acquainted with the defendant saw the

victim with a gun at the crime scene). Hines did not meet the "high standard of showing that the verdict probably would have been different" based on Ross's testimony. *More*, 880 N.W.2d at 510.

### B. Actual Innocence

Hines also argues he is actually innocent of second-degree murder. Actual innocence is a demanding standard, requiring "clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Dewberry*, 941 N.W.2d at 5 (quoting *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018)). This requires "factual innocence, not mere legal insufficiency." *Id.* at 7 (citation omitted). Actual innocence "has an even higher burden" than Hines's claim of newly discovered evidence. *McGee v. State*, No. 22-1993, 2024 WL 4760534, at *4 (Iowa Ct. App. Nov. 13, 2024).

First, we question whether Hines has presented a proper actual-innocence claim since he did not wholly deny the offense occurred but instead claimed self-defense. *See Dewberry*, 941 N.W.2d at 6, 9 (noting that *Schmidt* involved a "potentially viable claim of actual innocence" because the applicant "wholly denied the offense occurred"); *see also Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (stating that intoxication and self-defense arguments "go to legal innocence, as opposed to factual innocence"); *Penticoff v. State*, No. 23-0650, 2024 WL 2043142, at *2 (Iowa Ct. App. May 8, 2024) (questioning whether applicant "properly asserted a claim of actual innocence" where he raised intoxication and self-defense arguments in a postconviction-relief challenge to his guilty plea). Second, for the same reasons discussed above, we agree with the district court that Hines failed to prove that no reasonable fact finder could convict him in light

of all the evidence. Even with Ross's testimony, a juror could still find that Williams was unarmed or that Hines failed to act reasonably or proportionately.

For these reasons, we affirm the district court's denial of Hines's application for postconviction relief.

**AFFIRMED.**